# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

Case No.

HUNG PHI DUONG, and
KIM NHUNG THI NGUYEN
d/b/a DDG Digital Design Group,

      Plaintiffs,

v.

DDG BIM SERVICES LLC,
a Florida limited liability company,

DDG BIM SERVICES PVT. LTD.,
a Republic of India company,

DDG ENGINEERING SERVICES PVT. LTD.,
a Republic of India company,

SARATH BABU,
a/k/a Premarajan Geetha Sarath Babu,
a/k/a Sharath Babu PG, and

SHAMLA ABOOBACKER,
a/k/a Anitha Manoj,
a/k/a Anithamanu,

      Defendants.

---

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs, Hung Phi Duong and Kim Nhung Thi Nguyen, doing business

as DDG Digital Design Group, by and through their attorney, Griffin Klema,

Esq., and pursuant to Fed. R. Civ. P. 7, sues defendants DDG BIM Services, LLC, DDG BIM Services Private Ltd., DDG Engineering Services Private Ltd., Sharath Babu, and Shamla Aboobacker, and alleges:

## NATURE OF THE ACTION

1.      This is an action for damages and to enjoin ongoing and irreparable harm caused by two former employees who misappropriated trade secret information, infringed trademark rights, and are misrepresenting themselves as DDG (plaintiffs) throughout the world and actively interfering with plaintiffs' US customers.

## THE PARTIES

2.      Plaintiffs Hung Phi Duong and his wife, Kim Nhung Thi Nguyen, (collectively plaintiffs, "DDG" or "Plaintiff DDG") are permanent residents of the State of California, citizens of the State of California, and do business throughout the United States and internationally as DDG and Digital Design Group.

3.      On information and belief, defendant Sharath Babu ("Sharath") is a citizen of the Republic of India.

4.      On information and belief, defendant Ahamla Aboobacker ("Anitha") is a citizen of the Republic of India.

5.     Defendant DDG BIM Services LLC ("DDG Florida") is a Florida limited liability company with its principal place of business within this District, at 4901 4th St. N., Suite 300 St. Petersburg, FL 33702.

6.     Defendant DDG BIM Services Private Ltd ("DDG India BIM") is a business domiciled in and formed in the Republic of India, is a citizen of India, and has its principal place of business at 116 K Tower 1, DD Golden Gate, Palachuvadu, Kakkanadu, Ernakulam-682 030. Its Corporate Identity Number is U93000KL2019PTC058258.

7.     Defendant DDG Engineering Services Private Ltd ("DDG India Engineering") is a business domiciled and formed in the Republic of India, is a citizen of India, and has its principal place of business at 116 K Tower 1, DD Golden Gate, Palachuvadu, Kakkanadu, Ernakulam-682 030. Its Corporate Identity Number is U74200KL2021PTC067791.

8.     Defendants Anitha and Sarath are the sole members of DDG Florida.

## JURISDICTION & VENUE

9.     This Court has subject matter jurisdiction over DDG's claims under 28 U.S.C. §§ 1331 and 1338(a) in that these claims arise under federal law, including the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Protect Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*

10. This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because the defendants and plaintiffs are citizens of different States and citizens of a foreign state, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

11. This Court has personal jurisdiction over DDG Florida because it is domiciled in the State of Florida.

12. This Court has personal jurisdiction over DDG India BIM, DDG India Engineering, Sharath, and Anitha because each committed a tort within this state by causing to be registered a business infringing DDG's trademark rights, and causing actual and prospective confusion with DDG's customers.

13. Venue is proper in this District pursuant to 28 USC §§ 1391 and 1400(a) because DDG Florida may be found here, and defendants DDG India BIM, DDG India Engineering, Sharath, and Anitha operate in the United States through DDG Florida.

## FACTS COMMON TO ALL COUNTS

### Plaintiffs' U.S. Operations and Development of its Intellectual Property

14. Plaintiffs Hung Phi Duong and his wife have operated jointly as a small business through their business name DDG® for nearly 20 years. During that time, they invested considerable time and capital to develop the goodwill and reputation of the business and brand in the minds of consumers, including

the DDG® mark, in connection with its professional services. Consequently, the DDG® mark acquired great value as a specific identifier of plaintiffs' services to distinguish them from those of others.

15.     Plaintiff DDG has marketed and provided its professional services in connection with the DDG® mark (the "Trademark"). Since plaintiffs began using the Trademark, its use of the Trademark in connection with its services has been continuous and exclusive. Customers throughout the United States readily recognize the Trademark as a distinctive designation of plaintiffs' services. The Trademark is an intellectual property asset of great value as a symbol of DDG's quality services and goodwill.

16.     The Trademark has acquired recognition in the marketplace and plaintiffs has thereby obtained common law rights in the mark.

17.     Plaintiff DDG is the owner of its federal DDG® mark (the "Registration"). A true and correct copy of that registration, no. 6,872,898 is attached hereto as Exhibit 1.

18.     The Registration is associated with engineering, engineering design services; engineering drawing services; computer-aided engineering services for others; consulting in the field of engineering; consulting services in the field of industrial engineering; and drafting of plans and engineering drawings for

others; structural engineering design services. The date of its first use in commerce was at least as early as May 18, 2005.

19.    Over the course of nearly 20 years, Plaintiff DDG developed certain confidential information, including

      a.  actual clients;

      b.  prospective clients;

      c.  high-level management information regarding operations;

      d.  marketing strategies and business development plans;

      e.  pricing for its services;

      f.  skills, responsibilities, and compensation of employees; and

      g.  compilations of information;

(collectively and individually Plaintiff DDG's "Trade Secret").

20.    DDG took reasonable steps to maintain the confidentiality of its Trade Secret by disclosing it only to certain key personnel. Initially, the Trade Secret remained solely in the possession of DDG's proprietors, Mr. Duong and Ms. Nguyen.

21.    DDG's business grew, and it outsourced some of its operations to an entity in the Republic of India, Advenser Engineering Services Pvt. Ltd. ("Advenser") in 2015. Defendants Anitha and Sharath at that time were

employees of Advenser, and became acquainted with plaintiffs and the business of DDG.

22.   On May 21, 2017, defendant Anitha wrote to Plaintiff DDG requesting that she continue her work for DDG not through Advenser, but directly on her own as an independent contractor. Plaintiffs then proceeded to engage defendants Anitha and Sharath as independent contractors, paying them directly for services they performed on plaintiffs' behalf.

23.   The relationship between plaintiffs and defendants was initially that of independent contractors, and DDG had them perform various tasks, including preparing drawings, which defendants would then provide to DDG. In reviewing the work the defendants completed, DDG would provide instructions to defendants to revise the drawings, as necessary, and would then finalize them for a client.

## Plaintiffs Create the Indian Branch Office

24.   Plaintiffs' business grew and on May 5, 2019, defendants Anitha and Sharath proposed that *plaintiffs* create an Indian office in Kochi while Anitha and Sharath would remain plaintiffs' managerial employees for plaintiffs' Indian operations.

25.   Further communications ensued between defendants and DDG, and on May 8, 2019, Sharath emailed plaintiff Duong documents demonstrating

his and Anitha's credentials and justification for the pay they had requested. A true and correct copy of Sharath's email, dated May 8, 2019, together with resume enclosures and budget proposal is attached hereto as Exhibit 2.

26.     Included in that email, defendants Anitha and Sarath created a "Budget Proposal" that outlined the scope of the new Indian office, with the organizational chart making clear that plaintiffs would be the owner of the Indian entity while Anitha and Sarath mere employees:



Ex. 2. at *23.

27.    Meetings between plaintiffs and Anitha and Sharath followed, in which various startup and administrative matters were discussed and recorded as meeting minutes for May 11, 2019, and May 13, 2019. A true and correct copy of the meeting minutes is attached hereto as Exhibit 4.  The red text shows Duong's type-written instructions to Sarath and Anitha, while the black text was authored by defendants.

28.    In an email on May 13, 2019, Sharath reiterated what he wrote on the corresponding May 13, 2019, minutes: that the new Indian entity would be registered "on Anitha's and Sharath Name [sic] initially and later **will transfer ownership to Mr.Phil** as we have to quickly start the work." A true and correct (bank account redacted) copy of the email is attached hereto as Exhibit 5.

29.    The writings reflected the parties' understanding and agreement that the sole purpose of registering the company in defendants Anitha's and Sharath's names was because if DDG were to register the business as a foreigner, Sharath represented that it would  be "a lengthy procedure and [plaintiff] will have to submit 'A-Z' documents of yours as well as [plaintiffs'] partners." See Ex. 5.

30.    In reliance upon defendant Sharath's representations, plaintiffs proceeded to instruct him and defendant Anitha to register defendant DDG India BIM, which Anitha and Sarath then did.

31.     Defendants Anitha and Sharath understood and agreed that the new entity, DDG India BIM, prior to and after its formation, was truly owned by plaintiffs either as actual or beneficial owner thereof and through express agreement by defendants Anitha and Sharath to surrender, assign, and otherwise transfer their placeholder temporary ownership to Plaintiff DDG upon completion of all necessary regulatory paperwork being completed and approved. Defendants Anitha and Sharath expressly understood that they were merely temporary legal proxies for Plaintiff DDG (Phi Hung Duong and Kim Nhung Thi Nguyen), as the true and equitable owner of the Indian business and its assets.

32.     DDG India BIM was then incorporated on June 3, 2019, and secured a Certificate of Incorporation with the Government of India, Ministry of Corporate Affairs.

33.     Upon registering the company, defendants Anitha and Sharath then accepted their full-time employment offers made by plaintiff, through the DDG India BIM back-office entity, with managerial responsibilities over plaintiffs' India-based assets and personnel. Offers of employment for each of the defendants are attached hereto as Exhibit 6.

34.     In furtherance of the understanding and agreement, based on the repeated representations and conduct of defendants Anitha and Sharath,

plaintiffs invested nearly $1,000,000 in (A) tangible property, including signage, office furniture, office space (rent), computers, software licenses, and other business assets, as well as (B) intangible property, including labor (salaries and benefits), Trade Secret, trademarks, and goodwill.

35.    After DDG India BIM's formation in 2019, the relationship between it, Sharath, and Anitha on the one hand—and Plaintiff DDG on the other—was mutually beneficial and consistent with the parties' understanding, and employed approximately 50 persons under the supervision of Anitha and Sharath.

36.    During that time, defendants Anitha and Sharath, as manager-employees of plaintiffs' Indian office, became privy to DDG's Trade Secrets, which DDG disclosed to them, as employees, under an agreement that the Trade Secrets would not be disclosed to any third parties, or used by them in competition with DDG.

37.    Plaintiffs further authorized DDG India BIM to utilize plaintiffs' Trademark in manufacturing signage to be placed at the office, and other marketing and branding collateral materials. Attached hereto as Exhibit 7 is a photograph depicting plaintiffs' DDG mark in use at its Indian office with defendants Anitha and Sharath seated on a couch beneath the logo installation.

38.    Similarly, Anitha and Sharath registered or caused to be registered certain social media profiles on behalf of DDG India BIM and used the DDG Trademark in branding those outlets, including:

      a.  a Facebook profile "ddgbimservices" Exhibit 8;

      b.  an Instagram profile "ddgbimservices" Exhibit 9;

      c.  a YouTube profile "DDG BIM Services" Exhibit 10; and

      d.  a LinkedIn profile "ddg-bim-services-pvt-ltd" Exhibit 11.

39.    On the Facebook account, Anitha or Sharath wrote an "about" description which indicates the date of founding of the business is 1996, the date which *plaintiffs* began its US-based business activities. In 1996 Anitha would have been aged 12, while Sarath would have been aged 8.

40.    Plaintiffs' Trademark and logo also appear in one of the Facebook account's earliest photographs (dated May 16, 2019 and August 30, 2019), further showing the account was created for the benefit of plaintiffs. Ex. 8 at *5. Later photographs also show plaintiffs' proprietary images were used as part of the account's marketing, which include plaintiffs' domain name ("www.digitaldesigngroup.com") as watermarks on those images. Ex. 8 at *3.

41.    Similarly, the Instagram account was created for the benefit of plaintiffs with plaintiffs' Trademark appearing in one of the account's earliest photographs (dated September 8, 2019). Ex. 9 at *5. Later photographs clearly

show plaintiffs' proprietary images that were used as part of the account's marketing, which include plaintiffs' domain name ("www.digitaldesigngroup.com") as watermarks on those images. Ex. 9 at *4.

42.    The LinkedIn business profile was also created for plaintiffs' benefit by defendants Anitha and Sharath.

43.    The YouTube account was created by defendants Anitha and Sharath more recently, but consistently with the other social media accounts.

44.    In about December 2020, plaintiffs sent defendants Anitha and Sarath to Dubai seeking new business for plaintiffs DDG. Both Anitha and Sarath asserted to plaintiffs that no new business could be secured, but purportedly that they would be able to do so over time.

### The Defendants Secretly Create a Competing Entity in India and Start to Solicit Plaintiffs' Clients

45.    Soon after the Dubai trip, defendants Anitha and Sharath secretly created another entity, defendant DDG Engineering Services Private Ltd., in the Republic of India around January 2021. Defendants Anitha and Sharath incorporated this entity without disclosing it to plaintiffs with the intent to start a competing business to DDG and to siphon away and steal plaintiffs' existing and future customers, and to create a confusingly similar entity infringing on plaintiffs' Trademark.

46.     Prior to establishing the Indian office, plaintiffs owned two domain names and websites: digitaldesigngroup.com (which it has owned since 1997) and ddgbimservices.com (which it has owned since 2019). Since their creation and continuing to present, Plaintiff DDG uses those websites to market and promote its business, which display plaintiffs' Trademark and logo. Exhibit 12 shows a true and correct copy of plaintiff's home page on the digitaldesigngroup.com website. Plaintiffs' customers have come to associate plaintiffs' services with the Trademark, the logo, and the websites.

47.     Anitha and Sharath registered or caused to be registered two domain names: ddg-bimservices.com and ddgengineeringservices.com. Although initially Anitha and Sharath were authorized by plaintiffs to register the first domain name for DDG India BIM, they secretly registered the second on February 3, 2021, without authorization of plaintiffs for the purpose of competing with them. Defendants used plaintiffs' Trademark and logo on the ddgengineeringservices.com website without authorization. Exhibit 13.

48.     Anitha and Sharath directly or indirectly have profited from their unauthorized use used plaintiffs' Trademark and logo on the ddg-bimservices.com and ddgengineeringservices.com websites, as well as the social media accounts in an effort to masquerade as plaintiffs and with the direct intent

to defraud and steal away plaintiffs' clients and directly compete with plaintiffs for new business.

49.    As a result of their conduct, there has been actual confusion among existing, and on information and belief prospective customers of plaintiffs about the identity of DDG India BIM, DDG India Engineering, and plaintiffs—and the true source of engineering services provided to those existing and prospective customers.

50.    The social media accounts created by Anitha and Sarath link to the ddgengineeringservices.com domain, while the ddg-bimservices.com domain now redirects to DDG India Engineering's unauthorized domain. Both domains are presently controlled by defendants Anitha and Sharath.

**The Defendants Secretly Create DDG Florida, a US-Based Entity**

51.    In an effort to falsely legitimize their fraud and to compete with plaintiffs directly on US soil, one or more of defendants organized DDG Florida on February 14, 2022. Defendants have used DDG Florida to facilitate their efforts to steal plaintiffs' business and customers.

**The Defendants Successfully Defraud Plaintiffs and Plaintiffs' Customers**

52.    On information and belief, at some time in late 2020 or early 2021, the defendants began to instruct plaintiffs' Indian employees to work on projects and matters not assigned to them by plaintiffs. Defendants Anitha and Sharath

continued to allocate employee compensation paid by plaintiffs for certain personnel who were not conducting work for the benefit of Plaintiff DDG but rather for Anitha and Sharath in competition with plaintiffs.

53.    On information and belief, during this time Anitha and Sharath, through DDG India BIM, also misappropriated plaintiffs' physical infrastructure by directing plaintiffs' employees to utilize computers, office space, and other resources to perform work and services for Anitha and Sharath in their fledgling competitive enterprise, DDG India Engineering.

54.    Incredibly, Anitha and Sharath explicitly sought to perpetuate a fraud on admitted at least one of plaintiffs' US customers: Pan-Pacific Mechanical (a California company). That business that was initially deceived into paying funds directly to Anitha and Sharath for engineering services which Pan-Pacific believed originated from plaintiffs, but upon later suspicion of Raul Flores, Pan-Pacific refused to remit further payment to defendants.

55.    In response to Pan-Pacific's request for clarification, defendant Sharath admitted that DDG Florida was his and Anitha's, and made a direct connection between DDG Florida, DDG India BIM, and plaintiffs' true entity Digital Design Group, requesting payment directly to the defendants: "does it really matter if it is Digital Design Group or DDG BIM Service Pvt Ltd?." He then asserted collectively that "[w]e had our freelance employees working for

[Pan-Pacific]" and to "please consider us as you partner and work together." A true and correct copy of the email correspondence from Sharath is attached hereto as Exhibit 14.

56.     Sharath falsely, maliciously, and with the intent to deceive stated to Pan-Pacific that plaintiffs were not the owners of DDG India BIM, but rather that "Phihung was our client." A true and correct copy of the email correspondence from Sharath is attached hereto as Exhibit 15. Sharath made that knowingly false statements with the intent to deceive Pan-Pacific into believing the exact *opposite* of the truth: that the defendants were the original business whereas plaintiffs was merely a US-based customer of theirs.

57.     Sharath then falsely claimed that he and Anitha "had to quit" when the truth was that Phihung Duong had fired them. Ex. 15. Sharath made that false statement knowingly and with the intent to deceive Pan-Pacific.

58.     Sharath further admitted that he "approached [Pan-Pacific] when we came to know that [Pan-Pacific] **stopped giving work to Phihung due to some issues with our company name**." Ex. 15. The admission also proves the existence of actual confusion relating to plaintiffs' business and its DDG Trademark.

59.     Defendants utilized DDG Florida as a domestic proxy for their unlawful US-based deception, stating that "DDG BIM LLC is a separate

company registered in Florida" the financial account details which Sharath "gave only to [Pan-Pacific]" in order to funnel payments from US based customers of Plaintiff DDG. Ex. 15.

60.    Knowing that Indian legal proceedings were ongoing, Sharath then offered an alternative to acquire those illegal profits from Pan-Pacific, stating that "[i]f that account is frozen, I can provide you with another US account details where you can give us the money." Ex. 15.

61.    On information and belief, defendants Sharath and Anitha further hired a Texas-based attorney or collections entity to pursue Pan-Pacific in an effort to obtain payment on their illegal and fraudulent invoices. On information and belief, these improper collection efforts continue against Pan-Pacific and possibly other of plaintiffs' former or prospective customers, thus causing irreparable harm to the DDG Trademark and plaintiffs' business.

62.    On information and belief, other of plaintiffs' current and prospective customers were targeted by defendants, causing consumer confusion with respect to plaintiffs' Trademark, harming plaintiffs' goodwill, and tortiously interfering with plaintiffs' current and prospective customers.

63.    The defendants Anitha, Sarath, DDG India BIM, and DDG India Engineering have held themselves out not as just a similar entity, but falsely *as being Plaintiff DDG itself*, and diverted customers from plaintiffs to defendants

without the knowledge or consent of plaintiffs. As a direct consequence of the unauthorized use of plaintiffs' Trademark, the defendants have improperly profited from their fraud, having obtained funds from plaintiffs' current or prospective customers.

### The Defendants file a fraudulent Indian trademark application

64.    To further legitimize their fraud, defendants Anitha and Sarath filed, without plaintiffs' consent, an application to register DDG DIGITAL DESIGN GROUP logo in India in the name of DDG India BIM. Defendants applied for the mark in furtherance of their efforts to misappropriate plaintiffs' goodwill, hold themselves out as plaintiffs, and defraud plaintiffs and plaintiffs' customers. The Indian intellectual property office assigned application no. 5144587 to the defendants' fraudulent application.

### Plaintiffs discovers the defendants' fraud by insider informant and fires Anitha and Sharath

65.    Earlier this year, plaintiffs then learned of the defendants' activities through an email from an employee of DDG India BIM, informing plaintiffs of Anitha and Sharath's activities, fraud, and deception. Plaintiffs independently investigated the anonymous email's allegations and confirmed them to be true. As a result of that investigation, on February 14, 2022, plaintiffs fired Anitha and Sharath from the employment of DDG India BIM.

66.    On or about March 10, 2022, plaintiffs then filed a criminal complaint in the Republic of India against defendants Anitha and Sharath for theft, as well as a civil action on or about May 23, 2022.

67.    Plaintiffs also opposed the defendants' Indian trademark application on March 9, 2022.

**The Defendants slightly modify their infringing name and logo**

68.    As a result of their fraud being discovered by plaintiffs, defendants Anitha and Sharath then slightly modified certain DDG graphics and logos on the websites and social media accounts under their control. Notwithstanding those perfunctory modifications, and as is evident from the broad scope of protection of plaintiff's Trademark, the defendants continue to use and trade on plaintiffs' Trademark, including its font, text sizing, and overall styling, merely modifying one word: "Digital <u>Design</u> Group" to "Design <u>Development</u> Group," and adding a new graphic element—all with the apparent intent to shield themselves from liability while perpetuating consumer confusion, harming plaintiffs' goodwill, and infringing plaintiffs' trademark rights in the United States and in India. Attached hereto as Exhibit 16 is a screen capture of the ddgengineeringservices.com website, showing the modified logo at the top, but with the physical DDG Trademark logo appearing in the photograph below it.

69.    Defendants presently claim ownership over all physical infrastructure in India, as well as to the websites and social media accounts.

70.    The defendants have and continue to harm plaintiffs' goodwill and reputation and infringe on plaintiffs' Trademark, causing serious and irreparable damages to plaintiffs.

71.    All of the defendants' marketing, including the domains and social media accounts, are in English, not Singhalese. The top-level domains are .com, not .in (India). The social media accounts are registered with US-based companies (Meta, LinkedIn, Google). The defendants have successfully defrauded and obtained monies from plaintiffs' US-based customers. The defendants' activities in India, targeted at plaintiffs and plaintiffs' US customers have had a substantial effect in the United States.

72.    Exercising jurisdiction over the activities of defendants in India would not interfere with the sovereignty of India because the scope of what plaintiffs seeks in its trademark claim concerns either domestic tangible assets or online digital media assets.

73.    The court may enforce the Lanham Act against the defendants extraterritorially because doing so will not infringe the rights of the Republic of India, and the defendants' conduct has had an actual and potential adverse effect on commerce in the United States. The defendants' deliberate extension of their

activities into the US through a domestic entity makes the individual defendants constructively US citizens for purposes of extraterritorial enforcement of the Lanham Act. And most fundamentally, enforcing the Lanham Act against all of the defendants would not infringe on the sovereignty of the Republic of India because an Indian court has already entered an order restraining defendants from using the DDG Trademark in India. A true and correct copy of the preliminary injunction order is attached hereto as Exhibit 17. To date, that injunction has not been dissolved or otherwise challenged by the defendants in the Indian action.

74.    Plaintiffs have been forced to retain the services of counsel to enforce their rights.

## COUNT 1 – Trademark Infringement
## Lanham Act, 15 U.S.C. § 1114
*(all defendants)*

Plaintiffs incorporate and reallege the allegations contained in paragraphs 1 to 74.

75.    Plaintiff Hung Phi Duong owns the DDG Trademark, which is inherently distinctive and/or has established secondary meaning as evidenced by the U.S. Patent and Trademark Office Registration No. 6,872,898.

76.    Defendants have engaged in the acts set forth above to cause confusion and to deceive and defraud both the public and consumers of plaintiffs' services.

77.    Defendants have, without plaintiffs' permission, used in commerce a reproduction, counterfeit, copy, or colorable imitation of the DDG Trademark in connection with selling, offering for sale, advertising, and/or promoting defendants' engineering services.

78.    The unauthorized use of the DDG Trademark is likely to cause, and has caused, confusion, and mistake, and is likely to deceive, and has deceived, the consuming public as to the affiliation, connection, or association of defendants, with plaintiffs that they do not have.

79.    Defendants' actions constitute violations of Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

80.    Defendants' conduct has and will continue to cause confusion to, mistake by, and deception of customers as to the source of defendants' services and/or its relationship with plaintiffs.

81.    As a direct and proximate result of defendants' deliberate and intentional infringement, plaintiffs has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law.

82.    Defendants' conduct has and will continue to cause irreparable harm to plaintiffs unless restrained, restricted, and enjoined by this Court.

83.    Defendants' deliberate and intentional infringement makes this an exceptional case under 15 U.S.C. § 1117(a) and allows for the award of

defendants' profits, treble damages, and the costs of the action including its reasonable attorney's fees and costs.

**COUNT 2 – Unfair Competition & False Advertising**
**Lanham Act, 15 U.S.C. § 1125(a)**
*(all defendants)*

Plaintiffs incorporate and reallege the allegations contained in paragraphs 1 to 74.

84.    Defendants' actions in using the DDG Trademark in connection with engineering services constitutes false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85.    Defendants' direct and indirect false statements and misrepresentations concerning their affiliation with plaintiffs are material in that the representations are likely to influence, and have influenced, the purchasing decisions of consumers.

86.    Defendants have improperly promoted their services on the defendants' Domains and social media profiles and accounts as "DDG" and to actual and potential customers of plaintiffs and, in doing so, has misrepresented the nature of its services to be those of plaintiffs.

87.    Defendants have and continue to engage in the aforementioned acts with the intent to deceive and defraud the public and consumers of plaintiffs' engineering services to pass and palm off defendants' services as those of plaintiffs. Defendants' improper and infringing acts have created and are likely

to continue to create confusion in the minds of reasonable consumers as to the affiliation and sponsorship of their activities by plaintiffs.

88.    Defendants' misrepresentations violated, and continue to violate the Lanham Act in that the misrepresentations have actually deceived, or have the tendency to deceive, a substantial segment of the public that defendants are targeting with their false and misleading advertising, marketing and promotional materials.

89.    Defendants' misrepresentations to customers and potential customers by the use of marketing and promotion of the infringing name on its website and social media constitute a false designation of the origin of the services entering commerce on behalf of defendants and are false descriptions and representations of these services.

90.    Defendants violated the Lanham Act by placing in interstate commerce, or contributing to or acquiescing in their placement, the false and/or misleading statements that the defendants *were* plaintiffs through the various advertising and promotional efforts on the defendants' Domains, social media accounts, and other communications with or to actual or prospective customers of plaintiffs.

91.     Defendants' infringement has been and continues to be willful and in bad faith because of the continued infringing activities despite actual knowledge of plaintiffs' rights and demands to stop using the DDG Trademark.

92.     As the direct and proximate result of defendants' deliberate and intentional infringement, defendants have unlawfully profited and plaintiffs has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

### COUNT 3 – Theft of Trade Secrets
### Defend Trade Secrets Act, 18 U.S.C. § 1836
*(all defendants)*

Plaintiffs incorporate and reallege the allegations contained in paragraphs 1 to 74.

93.     Plaintiffs' services are used in interstate commerce.

94.     At all times, plaintiffs took reasonable measures to keep the Trade Secrets confidential, including but not limited to limiting access to confidential information.

95.     This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information. Plaintiffs have invested and continue to invest significant capital into processes and projects

that make use of plaintiffs' confidential, proprietary, and trade secret information, including that of plaintiffs' Trade Secrets.

96.    The misappropriated Trade Secrets are crucial to the success of the implementation, operation, and maintenance of plaintiffs' engineering services, and give plaintiffs a competitive advantage over others in the market.

97.    At no time did plaintiffs consent to the defendants' use or disclosure of the Trade Secrets or any other confidential information for any purpose other than for plaintiffs' benefit, and certainly not for the defendants' use in competition with plaintiffs.

98.    The defendants misappropriated plaintiffs' Trade Secrets by copying them to their own accounts, servers, and/or computers, and by using them to compete with plaintiffs and to target plaintiffs' clients for the defendants' economic benefit.

99.    Defendants Anitha's and Sharath's misappropriation of the Trade Secrets was intentional, knowing, willful, malicious, fraudulent, and oppressive within the meaning of 18 U.S.C. § 1836(b)(3)(B)(i)(C).

100.    Defendants Anitha and Sharath have failed to return the Trade Secrets and failed to destroy other copies that they may have made.

101.    By virtue of their employment by plaintiffs, Anitha and Sharath had a duty not to reveal confidential information and Trade Secrets obtained during

their employment by plaintiffs or to use such confidential information and trade secrets for their own benefit and to the detriment of plaintiffs.

102. Defendants DDG India BIM, DDG India Engineering, and DDG Florida either accepted such confidential information or Trade Secrets with knowledge that it was confidential information or trade secrets taken by Anitha and Sharath in violation of their duty of confidentiality, or DDG India BIM, DDG India Engineering, and DDG Florida were deliberately indifferent or reckless in failing to prevent Anitha and Sharath from using, disclosing, or misappropriating plaintiffs' confidential information or Trade Secrets.

103. The defendants' acts in furtherance of the use and misappropriation of plaintiffs' trade secrets was committed in the United States through proxy entities, including DDG Florida and online cloud providers believed to include Google (Google Docs), Microsoft (Onedrive), Box, and others. Accordingly, the defendants' conduct is subject to the Defend Trade Secrets Act.

104. As the direct and proximate result of defendants' misappropriation, plaintiffs have suffered damages within the meaning of 18 U.S.C. § 1836(b)(3)(B)(i)(I) in an amount to be determined and, if defendants' conduct is not stopped, plaintiffs will continue to suffer irreparable injury and significant damages.

105.   In addition, defendants have been unjustly enriched as a result their misappropriation of the Trade Secrets within the meaning of 18 U.S.C. § 1836(b)(3)(B)(i)(II) in an amount to be determined.

106.   Because plaintiffs' remedy at law is inadequate, plaintiffs seek, in addition to damages, injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A)(i) to recover and protect its confidential, proprietary, and Trade Secret information and other legitimate business interests. Plaintiffs' business relies on its reputation and ability to maintain and grow its client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

107.   Defendants aided and abetted the misappropriation by the other defendants of the Trade Secrets within the meaning of the DTSA, 18 U.S.C. § 1836, to the benefit of DDG India Engineering and DDG Florida.

### COUNT 4 – BREACH OF CONTRACT
*(Anitha and Sharath)*

Plaintiffs incorporate and reallege the allegations contained in paragraphs 1 to 74.

108.   Defendants Anitha and Sharath entered into an agreement with plaintiffs whereby they would transfer, turnover, and otherwise surrender their temporary in-trust ownership of DDG India BIM to plaintiffs.

109.   Plaintiffs provided consideration in the form of salary, access to the Trade Secrets, operating capital, goodwill, and other valuable consideration,

including the cost of incorporation of DDG India BIM, with the explicit understanding and agreement that Anitha and Sharath would remain loyal to plaintiffs and upon plaintiffs' demand to surrender and transfer their ownership in title only status of DDG BIM Services Pvt Ltd to plaintiffs.

110.   Plaintiffs made a written demand to Anitha and Sharath to transfer ownership of DDG BIM Services Pvt Ltd to plaintiffs on November 2, 2019. Defendants represented that it would do so "[a]fter shifting our new office we will transfer."

111.   To date, neither Anitha nor Sharath have transferred their ownership in DDG BIM Services Pvt Ltd to plaintiff, thus materially breaching the agreement.

112.   Plaintiffs has satisfied all conditions precedent, or they have been met, waived, or otherwise excused.

## COUNT 5 – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND BREACH OF DUTY OF LOYALTY
### *(Anitha and Sharath)*

Plaintiffs incorporate and reallege the allegations contained in paragraphs 1 to 74.

113.   Defendants Anitha and Sharath entered into an employment agreement with plaintiffs. As part of their employment, Anitha and Sharath had a common law duty of loyalty to plaintiffs.

114. Their agreements also contained an implied covenant to act in good faith and deal fairly with plaintiffs.

115. By accepting salary, benefits, and taking and remaining in possession of plaintiffs' confidential information, Anitha and Sharath violated, and continue to violate, the employment agreement's implied covenant of good faith and fair dealing by frustrating plaintiffs' rights to benefit from the agreements.

116. By misappropriating the Trade Secrets, deceiving plaintiff, attempting to and actually interfering with plaintiffs' actual and prospective customers, Anitha and Sharath breached their duty of loyalty and tortiously interfered with plaintiffs' existing customer relationships.

117. Their breach of the implied covenant of good faith and fair dealing and breach of their duty of loyalty has caused, and will continue to cause, plaintiffs to suffer substantial monetary damages, in an amount to be determined, as well as monetary damages that cannot be calculated, and irreparable harm to its reputation and goodwill.

### COUNT 6 – Conversion
*(Anitha and Sharath)*

Plaintiffs incorporate and reallege the allegations contained in paragraphs 1 to 74.

118.   Plaintiffs paid for office supplies, furniture, office space, computers, software, marketing signage and promotional materials, among other tangible and intangible assets, including but not limited to knowledge and know-how regarding plaintiffs' customer and vendor lists, samples, and demos.

119.   Defendants Anitha and Sharath intentionally and unlawfully exercised dominion over plaintiffs' property.

120.   Defendants' conduct constitutes a conversion of plaintiffs' property contrary to Florida law.

121.   Defendants' acts of conversion were committed willfully, knowingly, maliciously, and in conscious disregard of their legal obligations to plaintiffs.

122.   As a result of such acts, plaintiffs has suffered damages, and, if defendants' conduct is not stopped, plaintiffs will continue to suffer irreparable injury and significant damages.

## COUNT 7 – Civil Conspiracy
### *(all defendants)*

Plaintiffs incorporate and reallege the allegations contained in paragraphs 1 to 122.

123.   The defendants combined with an acted in concert with one another for the purpose of injuring plaintiff, including to infringe its trademarks, steal its trade secrets, tortiously interfered with current or prospective customers of

plaintiff, misappropriate and convert business assets and equity ownership in DDG India BIM to themselves, and defraud plaintiff, its existing customers, and prospective customers.

124. Each defendant took affirmative act in furtherance of the combination and conspiracy.

125. Because of the combination and conspiracy, the defendants are jointly and severally liable to plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, Hung Phi Duong and Kim Nhung Thi Nguyen demand the following relief against defendants:

A. find that the DDG Trademark has been willfully infringed by each defendant in violation of 15 U.S.C. § 1114, and that the defendants competed unfairly with plaintiffs under Florida common law;

B. enter a preliminary and permanent injunction against defendants, their officers, agents, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or participation with defendants, enjoining them from engaging in the following activities and from assisting or inducing, directly or indirectly, others to engage in the following activities:

a.  using to market, advertise, promote, sell, offer for sale, and/or identify defendant's services with the DDG Trademark, any other brand name that includes "DDG," or any mark that is confusingly similar to the DDG Trademark or is likely to create the erroneous impression that defendant's services originate from plaintiffs, are endorsed by plaintiffs, or are connected in any way with plaintiffs;

b.  reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any engineering services bearing any DDG Trademark and/or any confusingly similar marks;

c.  engaging in business using any "DDG" name or any variation thereof in any manner whatsoever;

d.  otherwise infringing or diluting the DDG Trademark and/or any of plaintiffs' other trademarks;

e.  falsely designating the origin of defendant's services;

f.  unfairly competing with plaintiffs in any manner; or

g.  causing a likelihood of confusion or injuries to plaintiffs' business reputation;

C. because of the exceptional nature of this case resulting from the defendants' deliberate infringing actions, award plaintiffs all reasonable

attorneys' fees, costs and disbursements incurred as a result of this action, pursuant to 15 U.S.C. § 1117 and that plaintiffs be entitled to and awarded enhanced damages;

D. award plaintiffs damages for defendants' trademark infringement pursuant to 15 U.S.C. § 1117 in the form of defendants' profits, damages sustained by plaintiffs and the costs of the action, together with prejudgment and post-judgment interest;

E. order the defendants to account for the profits resulting from their infringement, unfair competition, and false designation of origin, and pay over to plaintiffs an amount to be fixed by the Court in its discretion as it finds just as an equitable remedy, including:

  a. all profits received by defendants from sales and revenues of any kind made as a result of its infringing actions, said amount to be trebled;

  b. all damages sustained by plaintiffs as a result of defendants' acts of infringement, unfair competition, and false designation of origin, and that such damages be trebled;

  c. punitive damages stemming from defendant's willful, intentional, and malicious acts;

F. order Godaddy.com to transfer the domain names ddg-bimservices.com and ddgengineeringservices.com to plaintiffs;

G. order the host of the websites for ddg-bimservices.com and ddgengineeringservices.com to be transferred to plaintiffs and to delete any cached copies of such files as may exist on its own servers or on any content distribution network (CDN);

H. order Meta Platforms, Inc. to transfer the Facebook account "ddgbimservices" and the Instagram account "ddgbimservices" to plaintiffs;

I. order LinkedIn Corp. to transfer the LinkedIn account "ddg-bim-services-pvt-ltd" to plaintiffs;

J. order Google LLC to transfer the YouTube account "DDG BIM Services" to plaintiffs;

K. order that Sarath Babu and Shamla Aboobacker execute an assignment of and surrender all their interest in both DDG Engineering Services Pvt. Ltd. and DDG BIM Services Pvt. Ltd. together with their respective property and equipment to plaintiffs;

L. enter a judgment against DDG BIM Service Pvt Ltd, DDG Engineering Pvt Ltd, DDG BIM Services, LLC, Sarath Babu and Shamla Aboobacker

jointly and severally, awarding plaintiffs damages for the defendants'
fraud and conversion; and

M.for such further relief as the Court deems just and proper.

**VERIFICATION**

Under penalty of perjury, I declare that I have read the foregoing, and the
facts alleged therein are true and correct to the best of my knowledge and belief.

Executed on this 12th day of July, 2022.

   /s/ Hung Phi Duong      
Hung Phi Duong

**VERIFICATION**

Under penalty of perjury, I declare that I have read the foregoing, and the
facts alleged therein are true and correct to the best of my knowledge and belief.

Executed on this 12th day of July, 2022.

   /s/ Kim Nhuing Thi Nguyen    
Kim Nhung Thi Nguyen

Dated: July 12, 2023.

   /s/ Griffin Klema       
Griffin C. Klema, Esq.
Fla. Bar No. 100279
Griffin@KlemaLaw.com
Klema Law, P.L.
PO Box 172381
Tampa, FL 33672

420 W. Kennedy Boulevard
Tampa, FL 33606
Telephone: 202-713-5292
Attorney for Plaintiff