# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

## Case No. 8:23-cv-01551-KKM/LSG

HUNG PHI DUONG, and
KIM NHUNG THI NGUYEN
d/b/a DDG Digital Design Group,

      Plaintiffs,

v.

DDG BIM SERVICES LLC,
a Florida limited liability company,

DDG BIM SERVICES PVT. LTD.,
a Republic of India company,

DDG ENGINEERING SERVICES PVT. LTD.,
a Republic of India company,

SARATH BABU,
a/k/a Premarajan Geetha Sarath Babu,
a/k/a Sharath Babu PG, and

SHAMLA ABOOBACKER,
a/k/a Anitha Manoj,
a/k/a Anithamanu,

      Defendants.

---

## MOTION FOR DEFAULT FINAL JUDGMENT UNDER RULE 55(b)(2)

      Plaintiffs Hung Phi Duong and Kim Nhung Thi Nguyen, pursuant to Fed. R.

Civ. P. 55(b)(2), and Local Rule 1.10(c), move for default final judgment against the

all defendants.

## MOTION FOR DEFAULT FINAL JUDGMENT

Plaintiffs Hung Phi Duon and Kim Nhung Thi Nguyen filed this action to protect their business, DDG Digital Design Group, against two former employees who stole confidential information, customers, and assets from them in a brazen, defiant manner, effectively converting the entirety of plaintiffs' India operations for their own benefit and extending their unlawful conduct into the United States.

Plaintiffs served each of the defendants, and the Clerk of Court entered a default against each for failing to appear or defend this action. DE 9 (default against DDG BIM Services LLC); DE 24 (default against the remaining four defendants). This motion follows.

**WHEREFORE**, plaintiffs Hung Phi Duong and Kim Nhung Thi Nguyen, respectfully request the Court grant this motion, and enter a default final judgment against the five defendants, (i) DDG BIM Services LLC; (ii) DDG BIM Service Pvt. Ltd.; (iii) DDG Engineering Services Pvt. Ltd.; (iv) Sarath Babu; and (v) Shamla Aboobacker pursuant to Fed. R. Civ. P. 55(b)(2), jointly and severally, in the amount of $4,700,000 for damages for willful infringement and breach of contract, and $477 in costs; enjoining the defendants from infringing plaintiffs' trademark; compelling defendants and third parties in possession of the infringing domain names and social media accounts to transfer them to plaintiffs; ordering specific performance of the transfer of ownership of the India businesses to plaintiffs; find this case is exceptional, and that plaintiffs are the prevailing parties and entitled to their attorney's fees; and for such further relief as the Court deems just and proper.

## MEMORANDUM OF LAW

## INTRODUCTION

Plaintiffs seek the entry of default final judgment against the Defendants in this action alleging (1) trademark counterfeiting and infringement, (2) false advertising, (3) theft of trade secrets, (4) breach of contract, conversion, (5) common law breach of the duties of good faith and loyalty, (6) common law conversion, and (7) conspiracy. ECF No. 1 at ¶¶ 75-125.

The verified complaint seeks the following relief: (A) find that Defendants willfully infringed the Mark and competed unfairly with Plaintiffs; (B) enjoin the Defendants from using Mark; (C) award Plaintiffs their attorney's fees under the Lanham Act; (D) award Plaintiffs damages under the Lanham Act; (E) order the Defendants to account for their ill-gotten profits; (F) order the Defendants to surrender domain names and (G) the content of the servers hosting those sites; (H) (I) (J) order third parties to transfer control over social media profiles and accounts; (K) order Defendants Aboobacker and Babu to assign their interest in the juristic co-Defendants to Plaintiffs; (L) make the Defendants jointly and severally liable for Plaintiffs' damages, and (M) for other relief as the Court deems just and proper. ECF No. 1 at 33-37.

However, as explained below, this motion seeks judgment for efficiency's sake on Counts 1-4 and 7 while conditionally withdrawing relief under Counts 5 and 6 provided that the Court enters the requested relief on the primary claims.

### A. Legal Standard

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1316 (11th Cir. 2002). The effect of a clerk's default is that all of the plaintiff's well-pled allegations are deemed admitted. See, e.g., Giovanno v. Fabec, 804 F.3d 1361, 1366 (11th Cir. 2015); Amguard Ins. Co. v. Super Winn Nail Spa, Inc., No. 23-61304, 2024 WL 996444, at *1 (S.D. Fla. Mar. 5, 2024); see also Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) (defaulted defendant deemed to admit well-pled allegations, but "not held to admit facts that are not well-pleaded or to admit conclusions of law").

Only the well-pled allegations are admitted because "entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard for 'a sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." Singleton v. Dean, 611 F. App'x 671, 671 (11th Cir. 2015) ("The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, which is met when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1244-45 (11th Cir. 2015). Therefore, before entering a default judgment, a court must ensure that the well-pled allegations in the complaint state a substantive cause of action and provide a sufficient basis for the

particular relief sought. Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007); see also, e.g., Luxottica Group S.p.A. v. Individual, P'ship or Unincorporated Ass'n, No. 17-CV-61471, 2017 WL 6949260, at *2 (S.D. Fla. Oct. 3, 2017) ("Because a defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the Court must first determine whether there is a sufficient basis in the pleading for judgment to be entered."). If the admitted facts are sufficient to establish liability, then the court must ascertain the appropriate amount of damages. Nishimatsu Constr., 515 F.2d at 1206.

Where all the essential evidence needed to determine damages is found in the record, an evidentiary hearing on damages is not required. SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); Bandyopadhyay v. Defendant 1, No. 22-CV-22907, 2023 WL 2395475, at *1 (S.D. Fla. Mar. 7, 2023).

**B. Judgment on Plaintiff's Well-Pleaded Claims**

*1. Trademark Infringement and Unfair Competition (Counts 1 and 2)*

i. Lanham Act Liability

To prevail on a claim of trademark infringement Plaintiffs must establish "'(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.'" Tana v. Dantanna's, 611 F.3d 767, 773 (11th Cir. 2010) (quoting Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 358 (11th Cir. 1996)).

The complaint alleges that Plaintiffs own the DDG mark, which Plaintiff Duong registered with the United States Patent and Trademark Office in 2023, and which was assigned registration no. 6,872,898. (ECF 1-1). The federal certificate of registration reflects a date of first use in 2005, and Plaintiffs allege that they have continuously used the DDG mark in connection with their engineering services for nearly 20 years. (ECF 1 at ¶ 14). The certificate itself is sufficient evidence of ownership and the mark's validity, even apart from the allegations of the verified complaint. See FSC Franchise Co., LLC v. Express Corp. Apparel, LLC, No. 8:09-CV-454-T-23TGW, 2011 WL 1226002, at *4 (M.D. Fla. Feb. 28, 2011) (evaluating a motion for default judgment and concluding that "[t]he plaintiff has established that it possesses valid marks by identifying the registration numbers of each mark and providing copies of the marks from the U.S. Patent and Trademark Office"); see also Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1349 (S.D. Fla. 2001) ("A registration on the Principal Register provides prima facie evidence of, inter alia, the registrant's ownership and exclusive right to use the marks, 15 U.S.C. § 1057(B), as well as proof of the continual use of the marks dating back to the filing date of the applications for registration."). Furthermore, Defendants did not have the Plaintiffs' consent to sell or render services independent of Plaintiffs. (ECF 1 at ¶¶ 45, 48, 63-64). Defendants had actual knowledge of that fact. (ECF 1-14) ("Phil had complained that we are using the name DDG"). The Defendants' conduct also occurred in the United States, including the surreptitious creation of the Florida LLC, (ECF 1 at ¶ 51) and fraudulently representing to Plaintiffs' customers that "Phihung

was our client" in an effort to obtain funds from Plaintiffs' customers through the Defendants' India-based juristic entities that caused actual confusion, (ECF 1-14) ("we came to know that PPM Norcal stopped giving work to Phihung due to some issues with our company name"); (ECF 1 at ¶ 49).

The Defendants' use of the DDG mark is identical to the counterfeit mark used in connection with providing their infringing services. (ECF 1 at ¶ 50); (ECF 1-12) (infringing website); (ECF 1-17 to 1-10) (social media accounts linking to infringing website).

As to the second element, courts consider the following factors when determining the likelihood of confusion:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion.

N. Am. Med. Corp. v. Axion Worldwide, Inc., 522 F.3d 1211, 1220 (11th Cir. 2008).

Plaintiffs have adequately alleged confusion, which is corroborated by evidence of actual confusion. Defendants have used an identical mark, DDG, as part of their website. (ECF 1 at ¶ 50); (ECF 1-12). The services marketed by Defendants are the exact same service as Plaintiffs offer. (ECF 1-14). Plaintiff's mark and the brand employed by Defendants is identical. Compare (ECF 1-11) (Plaintiff's genuine website), with (ECF 1-12) (counterfeit website showing exact same styling of the DDG

mark). The Defendants' counterfeit marketing materials are also identical to Plaintiffs' Mark. Compare (ECF 1-1) (registration), with (ECF 1-8 at 5) (Instagram post using Plaintiff's wartermarked image); see also (ECF 1 at ¶ 40). The Defendants' intent to infringe is also established by their own communications seeking to obtain funds from Plaintiffs' customers. (ECF 1-14). The verified complaint and exhibits establish that the Defendants "adopted a mark confusingly similar to the plaintiff's mark such that there was a likelihood of confusion as to the origin of the goods." Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1503–04 (11th Cir. 1985).

Because Plaintiffs have sufficiently pleaded the fifth element for a claim of trademark infringement, they have also sufficiently alleged their claim for false advertising (Count 2, ECF 1 at ¶¶ 84-92). Id. ("The factors relevant to establishing [false designation of origin] are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement under 15 U.S.C. § 1114."); see Taylor v. Trapeze Mgmt., LLC, No. 0:17-cv-62262-KMM, 2019 WL 1468515, at *4 (S.D. Fla. Feb. 27, 2019) ("In the Eleventh Circuit, a false endorsement claim under the Lanham Act is treated the same as a trademark infringement or false association claim."); Babbit Elecs., Inc. v. Dynascan Corp., 38 F.3d 1161, 1181 (11th Cir. 1994) ("The same set of facts enabling [the plaintiff] to prevail under Section 1114(a)(1) [for trademark infringement] will result in recovery pursuant to Section 1125 [for false designation of origin of claim]."); Vivid Entm't, LLC v. J & B PB, LLC, No. 2:13-CV-524-FTM-29DN, 2015 WL 144352, at *3–4 (M.D. Fla. Jan. 12, 2015).

The verified complaint and exhibits thereto establish the Defendants' liability for trademark infringement (Count 1) and false advertising (Count 2).

ii. <u>Willful Liability</u>

The Defendants' acts also constitute willful infringement. Plaintiffs enjoy a statutory presumption that the Defendants' infringement was willful: a "violation is willful for purposes of determining relief if the violator … knowingly provided … materially false contact information to a domain name registrar, … in registering, maintaining, or renewing a domain name used in connection with the violation." 15 U.S.C. § 1117(e). The complaint alleges that defendants Aboobacker and Babu registered two domain names that incorporated the DDG mark. (ECF 1 at ¶ 50); (ECF 1-12). Not only that, the email from defendant Babu (copying defendant Aboobacker) further demonstrates their collective willful use of the mark for the purpose of unlawfully obtaining monies owed to Plaintiffs by registering the Florida LLC and brazenly stating that they "used [plaintiff Duong's] domain digital design group." (ECF 1-14). That conduct was not limited to just one of Plaintiffs' clients (Pan-Pacific Mechanical), but also "[w]ith other clients we [the defendants] use their [Plaintiffs'] domain." <u>Id.</u>

iii. <u>Lanham Act Damages</u>

As for Plaintiffs' damages, the Defendants' unlawful and willful use of the DDG mark allows Plaintiffs to recover statutory damages without proving a disgorgement remedy or actual damages. The Lanham Act's remedies section provides:

> the plaintiff may elect, … to recover, instead of actual

damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of —(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). District court judges have "[g]reat latitude" and "considerable discretion" in awarding damages on a default judgment. Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1564-65 (11th Cir. 1986); see also PetMed Express, Inc. v. MedPets.com, Inc., 336 F. Supp 2d 336 F. Supp. 2d 1213, 1219 (S.D. Fla. 2004) ("wide discretion") (citing Cable/Home Communication Corp. v. Network Prod., Inc., 902 F.2d 829, 852 (11th Cir. 1990)). Exercising that discretion, courts have taken a baseline statutory damages award, trebled that amount in light of a defendants' willful infringement, and again doubled it for purposes of deterrence. See Chanel, Inc. v. Xiangneng Li, No. 11-cv-23914-CMA, 2012 U.S. Dist. LEXIS 191592, *16 (S.D. Fla. Apr. 10, 2012). The maximum statutory damages are also appropriate where a defendant has saved the cost of developing the goodwill and the profits reaped by virtue of the infringement. Kobe Japanese Steak House of Florida, Inc. v. XU, Inc., 2014 WL 6608967 (M.D. Fla. Nov. 20, 2014). Large statutory awards have also been allowed on a default for egregious infringement. E-Z-Dock, Inc. v. KonaDocks LLC, No. 6:21-CV-2155-ACC-EJK, 2022 WL 8221613, at *1 n. 1 (M.D. Fla. Aug. 5, 2022) (awarding $1.5M, jointly and severally, on default judgment for trademark

infringement where an email established the defendants refused to cease engaging in the infringing conduct).

Here, because the Defendants have been defaulted and failed to appear and defend themselves in this litigation, it is not possible for Plaintiffs to establish the Defendants' profits damages with certainty because the Defendants are exclusively in possession of information relating to the amount of ill-gotten profits they have obtained from their willful misconduct. But, as plaintiff Duong attests, the damages sustained by him and co-Plaintiff Nguyen are substantial, running into seven figures based on the Defendants' breathtakingly expansive misconduct effectively stealing an entire business division by malicious conversion of Plaintiffs' tangible and intangible business assets, trading on Plaintiffs' goodwill, willfully infringing the DDG mark, and fraudulently obtaining payments from customers for services provided by Plaintiffs.

Plaintiffs' investment in their India operations totals $914,848.67 over three years. Decl. of Duong, ¶ 8. It takes Plaintiffs three years to train modelers to be productive employees that can produce engineering drawings, Decl. of Duong, ¶ 4, and the Defendants saved on that cost by simply converting Plaintiffs' business, goodwill, and trademark to their own use. Based on Plaintiffs' historical records of the return on their investment in their business, they estimate the Defendants' revenues to be three to four times the investment over that same time period. Decl. of Duong, ¶ 12. Since the three years from February 2022 to date (and Defendants have continued to infringe Plaintiff's mark and operate the business in which they have invested nearly $1 million), Plaintiffs' revenue losses are $2,700,000. Decl. of Duong, ¶ 13.

Given the egregiousness of the Defendants' conduct irreparably harming US-based business for which the Defendants have shown no remorse, the maximum damages permissible under the statute should be awarded: $2,000,000. Such an award would serve to partially compensate Plaintiffs though it would not account for possible punitive deterrent effect to those who think they can take over a U.S. brand, tortiously interfere with its domestic and international business, and siphon funds to foreign countries with impunity. While that is the maximum statutory range, such an award is amply supported by the evidence.

### iv. Lanham Act Injunctive Relief

In addition to money damages, Plaintiffs request entry of a permanent injunction against Defendants to prevent further infringement of the DDG Mark. (ECF 1 at 33-34).

A court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). Permanent injunctive relief is warranted when a plaintiff demonstrates that "(1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest." Kobe, 2014 WL 6608967, at *6 (M.D. Fla. Nov. 20, 2014) (granting an injunction as part of a default judgment). As to the first two elements, "[t]he Eleventh Circuit has noted that trademark

infringement by its nature often results in irreparable harm and that there is generally no adequate remedy at law." Bioclin BV v. Multygyn USA, LLC, 72 F. Supp. 3d 1288, 1296 (M.D. Fla. 2014) (citing Tally-Ho, Inc. v. Coast Cmty. Coll. Dist., 889 F.2d 1018 (11th Cir. 1989)). Given Defendants' liability for infringing Plaintiffs' trademark, and which Defendants continue to infringe, absent an injunction, Defendants will continue to use Plaintiffs' mark.

The public interest is also served by issuing the injunction considering that U.S. businesses should not be deceived as to the source or quality of engineering design services for commercial and industrial infrastructure on which their employees and personnel rely for safety. An injunction against Defendants should be granted to restrain them from continuing to use Plaintiffs' Mark, compel the transfer of the infringing domain names, ddgengineeringservices.com and ddg-bimservices.com, and compel the transfer of the social media accounts back to their rightful owners.

In an action "involving the registration, trafficking, or use of a domain name … a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C); see also Hunter Residential Servs., LLC v. AAA Randpro Plumbing, Inc., No. 8:16-cv-01311-CEH-TGW, 2017 WL 1987247, at *6 (M.D. Fla. Feb. 21, 2017) (finding a transfer to be appropriate); Sound Surgical Techs., LLC v. Leonard A. Rubinstein, M.D., P.A., 734 F. Supp. 2d 1262, 1278 (M.D. Fla. 2010) (ordering a transfer because "retention of the domain names creates a cognizable danger of further violations of the Lanham Act"). Because Plaintiffs have established that the infringing domains,

ddgengineeringservices.com and ddg-bimservices.com, are confusingly similar to, and wholly incorporate Plaintiffs' registered mark, the DDG Mark, transfer is warranted. See Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1066 (9th Cir. 1999) ("When a firm uses a competitor's trademark in the domain name of its web site, users are likely to be confused as to its source or sponsorship.").

### 2. Theft of Trade Secrets (Count 3)

#### i. DTSA Liability

As part of their illegal enterprise to wholly deprive Plaintiffs of their business and livelihood, the Defendants obtained trade secret information from Plaintiffs, and used it for their own benefit without Plaintiffs' permission.

The verified complaint alleges Defendants violated the Defend Trade Secrets Act ("DTSA"). It alleges Plaintiffs developed proprietary information, including the names and contact information of actual and prospective clients, operational processes, marketing strategies and business development plans, and that Plaintiffs took reasonable steps to keep that information confidential. (ECF 1 at ¶¶ 19-20). The DTSA defines trade secrets as "all forms and types of financial, business, scientific, technical, economic, or engineering information." 18 U.S.C. § 1839(3). Thus, the verified complaint establishes that Plaintiffs' confidential business information is, by definition, a trade secret subject to the protections of the DTSA.

Misappropriation of trade secrets includes the "use of a trade secret of another without express or implied consent" where that person "had reason to know" that they obtained the trade secret information "under circumstances giving rise to a duty to

maintain [its] secrecy." 18 U.S.C. § 1839(5)(B)(i)(II). Plaintiffs alleged that the Defendants had reason to know that the Trade Secrets were the property of Plaintiffs, and that exercising dominion over that information for the Defendants' own personal benefit was improper where defendants Aboobacker and Babu refuted the agreement to transfer ownership of the India entity to Plaintiffs and lied about their status as mere employees of Plaintiffs. (ECF 1 at ¶¶ 26-31, 36). Plaintiffs further allege that Defendants used that information to Plaintiffs' detriment by competing with Plaintiffs, (ECF 1 at ¶ 45).

The DTSA applies extraterritorially where an "act in furtherance of the offense was committed in the United States. 18 U.S.C. § 1836(2). The complaint alleges that the Defendants' misappropriation of the Trade Secrets occurred in the U.S. through online services and facilitated through DDG BIM Services, LLC, the Defendants' Florida limited liability company. The exhibit to the complaint confirms the purpose of the Defendants' collective action to deprive Plaintiffs of their intangible assets. (ECF 1-14) ("we registered a new company in the state of Florida").

ii. <u>DTSA injunctive relief</u>

In light of the confidential information obtained by defendants Aboobacker and Babu, the Court should enjoin them from using that information, and compel them to transfer over to Plaintiffs control of online accounts where that information resides, including Google accounts, while also compelling them to destroy any copies of Plaintiffs' trade secret information.

3. *Breach of Contract (Count 4)*

    i. <u>Liability for breach of contract</u>

A claim for breach of contract requires proof of the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. <u>Oasis West Realty, LLC v. Goldman</u>, 51 Cal.4th 811, 821 (Cal. 2011).

The complaint alleges the existence of an agreement between defendants Aboobacker and Babu respecting the transfer of ownership from them to Plaintiffs. The parties agreed that the new Indian entity would be registered "on Anitha's and Sharath Name initially and later will transfer ownership to Mr.Phil as we have to quickly start the work." (ECF 1 at ¶ 28); (ECF 1-4). Defendant DDG BIM Services Pvt., Ltd. was then formed, with defendants Aboobacker and Babu understanding that the entity was truly owned by Plaintiffs. (ECF 1 at ¶¶ 29-32). Plaintiffs invested capital in the creation and operation of DDG BIM Services, (ECF 1 at ¶ 34), and thereby performed their obligations under the agreement. Plaintiffs subsequently made a demand to transfer the ownership to them, (ECF 1 at ¶ 110), but to date the Defendants have refused. The complaint and its exhibits establish the existence of an agreement between defendants Aboobacker and Babu and Plaintiffs, which the defendants breached, causing Plaintiffs damages in the form of being denied their expected benefit of the bargain, namely, ownership of DDG BIM Services Pvt., Ltd. and revenues since 2022 to date after the Defendants effectively expelled Plaintiffs from the Indian operations.

ii.  <u>Contract damages</u>

Plaintiffs are entitled to their expectation damages. The Indian operations became profitable only after Plaintiffs invested nearly $1M between 2019 and 2022. But in 2022, the Defendants illegally cut off Plaintiffs and began to assume control over all revenues. Decl. of Duong, ¶ 10. The damages the Defendants have obtained which Plaintiffs would have otherwise earned had defendants Aboobacker and Babu honored their agreement, are between $2,700,000 to $3,600,000. Decl. of Duong, ¶ 13.

iii. <u>Specific performance</u>

Plaintiffs are entitled to specific performance of the agreement, as there is no adequate remedy at law other than to transfer ownership of both DDG BIM Services Pvt., Ltd., as well as DDG Engineering Services Pvt., Ltd. A decree of specific performance is an equitable remedy that a court may grant if it believes that justice so requires it and where a plaintiff establishes two things: (1) that the plaintiff is clearly entitled to such relief; and (2) that there is no adequate remedy at law. See <u>Am. S. Ins. Co. v. Env't Innovations, Inc.</u>, 2015 WL 3863635, at *5 (M.D. Fla. June 22, 2015); <u>Allegheny Cas. Co. v. United Construction Co. of Central Fla., Inc.</u>, 2014 WL 440083, at *7 (M.D. Fla. Feb. 3, 2014); <u>Travelers Cas. & Surety Co. of Am. v. Indus. Commercial Structures, Inc.</u>, 2012 WL 4792906, at *2 (M.D. Fla. Oct. 9, 2012). Justice requires an order of specific performance to require defendants Aboobacker and Babu to transfer their ownership in not only DDG BIM Services Pvt., Ltd., but also DDG Engineering Services Pvt., Ltd., which they created and to which they transferred assets from and paid for by Plaintiffs.

4. *Breach of Covenant of Good Faith, Breach of Duty of Loyalty, and Conversion (Counts 5-6)*

Though the Lanham Act and breach of contract claims not are not pleaded in the alternative, Plaintiffs would be willing to accept the damages and equitable relief afforded by those claims (as requested herein) as sufficient remedy in this action. Provided the Court awards Plaintiffs the relief they have requested under Counts 1-4 and 7, they would agree to forego relief for their claims for breach of the covenant of good faith and fair dealing and breach of common law duty of loyalty (Count 5), and common law conversion (Count 6).

Procedurally, however, Rule 41(a)(1)(A)(i) does not permit Plaintiffs to dismiss only some claims. In re Esteva, 60 F.4th 664, 675-77 (11th Cir. 2023) ("Rule 41(a) does not allow a plaintiff to voluntarily dismiss fewer than all of the claims brought in an action"). The alternative, as the Eleventh Circuit has recognized, is to proceed under Rule 54(b), where a "court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties [where] the court expressly determines that there is no just reason for delay. Fed. R. Civ. P. 54(b); cf. Esteva, 60 F.4th at 678 (stating in dicta that "Rule 54(b) provides a viable path to achieving the requisite level of finality"). Given the procedural posture of the case, the other alternative— amendment to the pleading under Rule 15, see Esteva, 60 F.4th at 678—would be burdensome, likely requiring a second iteration of the substantial motion practice that permitted service of the original complaint on the Defendants, and would thus contravene Rule 1.

Given the relief sought under some of Plaintiffs' claims, there is no just reason to delay entry of a judgment on Counts 1-4 and 7 only. Requiring Plaintiffs to seek judgment on Counts 5 and 6, where the remedies provided for those claims might duplicate and overlap those of the adjudicated claims, would be unnecessary where the Court provides Plaintiffs with full relief under Counts 1-4 and 7.

###### 5. *Civil Conspiracy (Count 7)*

Finally, the complaint alleges concerted action among the multiple defendants, with each of them engaging in acts in furtherance of a civil conspiracy, causing damages to the Plaintiffs. (ECF 1 at ¶ 123-24). A claim for civil conspiracy requires "the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." Doctors' Co. v. Sup. Ct. of Los Angeles Cnty., 49 Cal.3d 39, 44 (Cal. 1989). California law "does not preclude the subjection of agents to conspiracy liability for conduct which the agents carry out 'as individuals for their individual advantage' and not solely on behalf of the principal [entity]." Id. at 47. Here, the "defendants ha[ve] acted not simply as agents or employees of the [juristic] defendants but rather in furtherance of their own financial gain." Id. Accordingly, the liability of the Defendants for Plaintiffs' damages is joint and several.

### C. Plaintiffs' Costs and Attorney's Fees Entitlement

Plaintiffs are entitled to recover their costs of the action, both by statute and rule. *See* 15 U.S.C. § 1117; Fed. R. Civ. P. 54(d). The Plaintiffs request that the Court award costs in the total amount of $477 consisting of the case filing fee ($402.00) and

fees for service of process ($75.00), <u>See</u> Decl. of Griffin Klema, ¶ 2.

Upon the entry of a final judgment, Plaintiffs will then be the prevailing party and, because this case is exceptional due to the breathtaking scope of the Defendants' willful infringement and clear efforts to defraud U.S. customers of Plaintiff, Plaintiffs should be found entitled to their reasonable attorney's fees.

A court may award attorney's fees in a Lanham Act case if it is "exceptional." 15 U.S.C. § 1117(a). An exceptional case is one that "'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated." <u>Tobinick v. Novells</u>, 884 F.3d 1110, 1118 (11th Cir. 2018). Based on the admitted allegations that Defendants willfully used Plaintiff's federally registered Mark in brazen, unremorseful fashion, this case is exceptional and warrants an award of attorney's fees under the Lanham Act.

Provided the Court enters a judgment finding Plaintiffs have prevailed and that the case is exceptional, they will then file a supplemental motion substantiating the amount of their reasonable fees.

## CONCLUSION

The Court should award the Plaintiffs, having established that the verified complaint adequately alleges willful trademark infringement, misappropriation of trade secrets, and breach of contract—all through concerted action among the Defendants in a civil conspiracy—a judgment for money damages and costs in the amount of $4,700,477, together with injunctive relief enjoining the Defendants and specific performance requiring the Defendants (and third parties having control of it)

to surrender and return to Plaintiffs their lawful property. The domain names, social

media accounts, and equity in the juristic entities must all be transferred to Plaintiffs.

                                                        /s/ Griffin Klema
                                                        Griffin C. Klema, Esq.
                                                        Fla. Bar No. 100279
                                                        Griffin@KlemaLaw.com
                                                        **Klema Law, P.L.**
                                                        PO Box 172381
                                                        Tampa, FL 33672
                                                        420 W. Kennedy Boulevard
                                                        Tampa, FL 33606
                                                        Telephone: 202-713-5292
                                                        *Attorney for Plaintiffs*