## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

HUNG PHI DUONG and
KIM NHUNG THI NGUYEN,
d/b/a DDG Digital Design Group,

      Plaintiffs,

v.                           Case No.: 8:23-cv-1551-KKM-LSG

DDG BIM SERVICES, LLC;
DDG BIM SERVICES PVT. LTD;
DDG ENGINEERING SERVICES
PVT. LTD; SARATH BABU; and
SHAMLA ABOOBACKER,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      The plaintiffs Hung Phi Duong and Kim Nhung Thi Nguyen move for a default judgment on counts one through four and seven of their complaint alleging trademark infringement, unfair competition and false advertising, theft of trade secrets, breach of contract, and civil conspiracy. Docs 1, 27 at 3. For the reasons explained below, I recommend (1) granting the motion for a default judgment, (2) directing the Clerk to enter a judgment of $4,700,467 in favor of the plaintiffs and against the defendants, (3) dismissing the remaining claims without prejudice, and (4) ordering specific performance and permanently enjoining the defendants.

1

## I.    Allegations of the complaint.

Duong and Nguyen are married citizens of California. Doc. 1 at ¶ 2. Together they operate a business called DDG Digital Design Group. Doc. 1 at ¶ 2. The defendants are citizens of India, except for DDG BIM Services, LLC, ("DDG Florida") which is a Florida limited liability company with its principal place of business in Florida. Doc. 1 at ¶ 3–8.

DDG Digital Design Group owns the "DDG" trademark registered under number 6,872,898. Docs. 1 at ¶ 17; 1-1. The plaintiffs allege that they marketed and provided professional engineering services through the DDG trademark. Doc. 1 at ¶¶ 15, 18. Over twenty years, the plaintiffs developed confidential information, including information about actual and prospective clients, management information, marketing strategies, and pricing. Doc. 1 at ¶ 19. In 2015, the plaintiffs outsourced some of their operations to an entity in India called Advenser Engineering Services Pvt. Ltd, which employed the defendants Shamla Aboobacker (also known as "Anitha Manoj") and Sharath Babu. Doc. 1 at ¶ 21. In 2017, Aboobacker and Babu left Advenser and the plaintiffs hired them as independent contractors. Doc. 1 at ¶¶ 22–23. Two years later, Aboobacker and Babu proposed that the plaintiffs created an Indian office and assign them to manage employees. Doc. 1 at ¶¶ 24–26; Doc. 1-2. The parties discussed registering the new company in Aboobacker's and Babu's names, in part to avoid a lengthy administrative process, and then to transfer the ownership to Duong's name. Docs. 1 at ¶¶ 28–29; 1-4.

The new company—DDG India BIM ("DDG India")—was incorporated in India on June 3, 2019. Doc. 1 at ¶ 32. The company employed fifty people, and the plaintiffs invested nearly $1,000,000 in tangible and intangible property, including furniture, office space, computers, software licenses, salaries, benefits, trade secrets, and goodwill. Doc. 1 at ¶¶ 34–35. The plaintiffs authorized the defendants to use the DDG trademark, which they used to create social media profiles for DDG India. Doc. 1 at ¶ 37. Those profiles describe the business's founding as occurring in 1996, which is when the plaintiffs founded DDG Digital Design Group. Doc. 1 at ¶ 39; Doc. 1-7.

In 2020, Aboobacker and Babu secretly incorporated another entity—the defendant DDG Engineering Services Private Ltd.—to compete with DDG India and to steal DDG India's new and existing customers. Doc. 1 at ¶ 45. The defendants registered a domain name for their company and used the plaintiffs' trademark on that website without authorization. Doc. 1 at ¶¶ 46-47; Docs. 1-12, 1-13. The defendants also directed DDG India's employees to work on projects for their own company and to use DDG India's resources for that purpose. Doc. 1 at ¶ 52–53. Additionally, the defendants sought to register the plaintiffs' logo in India, without the plaintiffs' consent. Doc. 1 at ¶ 64. The defendants successfully deceived one of the plaintiffs' existing customers into paying for services that the customer initially believed originated from the plaintiffs. Doc. 1 at ¶ 54. Babu told the customer that the plaintiffs were not the owners of DDG India but were clients of

Babu and Aboobacker. Docs. 1 at ¶ 56, 1-14. When the customer discovered the truth, the customer refused to pay. Doc. 1 at ¶ 54.

Eventually, the plaintiffs received an anonymous e-mail from an employee of DDG India that detailed Aboobacker and Babu's fraud. Doc. 1 at ¶ 65. As a result, the plaintiffs fired Aboobacker and Babu from DDG India. Doc. 1 at ¶ 65.  The defendants, however, continued their fraud by (1) creating DDG Florida to compete with the plaintiffs in the United States and (2) only slightly modifying certain DDG graphics and logos on their web sites and social media. Doc. 1 at ¶¶ 51, 68.

The plaintiffs filed both a criminal complaint and a civil action in India and opposed the defendants' trademark application. Doc. 1 at ¶ 67. An Indian court preliminarily enjoined the defendants from using the DDG trademark. Doc. 1 at ¶ 73; Doc. 1-16. The plaintiffs allege that the defendants caused actual confusion among existing and prospective customers about the identity and affiliation of the plaintiff and defendant companies. Doc. 1 at ¶¶ 49, 68.

The plaintiffs sue the defendants for (1) trademark infringement in violation of 15 U.S.C. § 1114; (2) unfair competition and false advertising in violation of 15 U.S.C. § 1125(a); (3) theft of trade secrets in violation of 18 U.S.C. § 1836; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing and duty of loyalty; (6) conversion; and (7) civil conspiracy. Doc. 1 at ¶¶ 74-125. The plaintiffs invoke this Court's federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. The plaintiffs seek damages and injunctive relief. Doc. 1 at ¶¶ 33–37.

## II.    Subject matter jurisdiction and applicable law.

Section 1331 provides jurisdiction over the plaintiffs' claims under the Lanham Act, 15 U.S.C. § 1051, et seq., and the Trade Secrets Act, 15 U.S.C. § 1836. However, jurisdiction under Section 1332 is unclear. Although the complaint alleges that DDG Florida "is a Florida limited liability company with its principal place of business" in St. Petersburg, Florida, Doc. 1 at ¶ 6, these allegations fail to establish DDG Florida's citizenship. Under 28 U.S.C. § 1332(c)(1), "a limited liability company is a citizen of any state of which a member of the company is a citizen." *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021 n.1, 1022 (11th Cir. 2004). To sufficiently allege the citizenship of a limited liability company, the plaintiff must allege the citizenship of each member. *Id.* at 1022.

Here, the complaint fails to identify DDG Florida's members or their citizenship, and thus fails to demonstrate diversity jurisdiction. Nevertheless, because jurisdiction exists over the plaintiffs' trademark and trade secret claims, this Court may exercise supplemental jurisdiction over the related breach of contract and civil conspiracy claims. 28 U.S.C. § 1367; *Henley v. Payne*, 945 F.3d 1320, 1329 (11th Cir. 2019) (holding that if a federal court has federal question jurisdiction over some claims, then the court may exercise supplemental jurisdiction over state-law claims that "derive from a common nucleus of operative fact." (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997))).

The forum state's choice of law rules apply to a pendant state law claim. *Open Sea Dist. Corp. v. Artemis Dist., LLC*, 692 F. Supp. 3d 1151, 1174–75 (M.D. Fla. 2023);

*see also Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1458 n.19 (11th Cir. 1989). Here, the pendant state law claims allege breach of contract and civil conspiracy. Florida courts apply the doctrine of *lex loci contractus* in a contract dispute. *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995) (citing *Goodman v. Olsen*, 305 So. 2d 753, 755 (Fla.1974)). This means that the "law of the state in which the contract is made" applies to a contract claim. *Id.* Absent a contractual choice-of-law provision, the governing law is the law of the state in which the final act necessary to complete the contract occurs. *Calderon v. Sixt Rent a Car, LLC*, 114 F.4th 1190, 1200 (11th Cir. 2024) (quoting *Fioretti*, 53 F.3d at 1235); *see also ECB USA, Inc. v. Chubb Ins. Co. of N.J.*, 587 F.Supp.3d 1205, 1210– 11 (S.D. Fla. Nov. 15, 2021).

Determining the location of a contract's execution requires identifying where the offeree communicated acceptance to the offeror. *Fertilizantes Tocantins S.A. v. TGO Agriculture (USA), Inc.*, 599 F.Supp.3d 1193, 1203 (M.D. Fla. 2022) (quoting *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1092–93 (11th Cir. 2004)). Here, the parties formed their agreement over email and through telephone calls. Aboobacker and Babu approached the plaintiffs about creating an Indian office of DDG on May 5, 2019. Doc. 1 at ¶ 24. On May 8, 2019, Babu e-mailed Duong a detailed "Budget Proposal" for Duong's investment in DDG India outlining the scope and structure of the proposed new company. Doc. 1 at ¶¶ 25– 26; Doc. 1-2. After additional discussions, Doung ultimately accepted the terms Aboobacker and Babu presented by sending both defendants appointment letters on May 14 and 15, 2019. Docs. 1-2, 1-5, 1-6. Thus, the final act in the contract's

formation came from Doung's acceptance of the proposal, which he transmitted from his company in California. *See Fl. Real Estate Fund Two, LP v. Donda, LLC*, No. 23-80684-CIV-CANNON/Reinhart, 2023 WL 6566479, at *3 (S.D. Fla. Oct. 10, 2023) (finding that the transmission of an email executing an agreement's terms served as the undisputed "last act necessary to complete the contract.") Accordingly, California law governs the breach of contract claim. *See Calderon*, 114 F.4th at 1200; *Fioretti*, 53 F.3d at 1235.

As for the civil conspiracy claim, "Florida applies the 'most significant relationships test' for torts, which requires looking at 'the place where the injury occurred,' 'the place where the conduct causing the injury occurred,' 'the place of business of the parties,' and 'the place where the relationship, if any, between the parties is centered.'" *Blue-Grace Logistics LLC v. Fahey*, 653 F. Supp. 3d 1172, 1183 (M.D. Fla. 2023). The place where the conduct occurred is particularly important for torts involving unfair competition. *Id.* Although the conduct here occurred primarily in India, the defendants formed a company in Florida "to falsely legitimize their fraud and to compete with [the] plaintiffs directly on US soil." Doc. 1 at ¶ 51. Additionally, the defendants "have used DDG Florida to facilitate their efforts to steal plaintiffs' business and customers." Doc. 1 at ¶ 51. Thus, Florida law applies to the plaintiffs' civil conspiracy claim, which rests on the underlying tort of unfair competition.

## III.    DISCUSSION

Rule 55(b) permits a judgment by default if a defendant fails to plead or defend. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015). By defaulting, the defendant admits the factual allegations of the complaint. *Id.* at 1245; *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). If a sufficient factual basis exists for the judgment, a default judgment is warranted. *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). If the plaintiff seeks an amount certain and the record contains the essential evidence and factual allegations supporting the claim, a hearing to determine the amount of damages is unnecessary. FED. R. CIV. P. 55(b); *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015); *S.E.C. v. Smyth*, 420 F.3d 1225, 1231–32 (11th Cir. 2005).

The plaintiffs served the defendants, Docs. 7, 20, 21, against whom the Clerk entered a default after each failed to appear and defend. Docs. 9, 24. The plaintiffs move for default judgment against the defendants on counts one through four and seven of the complaint. Doc. 1.

### a.  Trademark infringement, unfair competition, and false advertising.

#### 1.  The factual allegations support a default judgment.

Counts one and two allege claims under the Lanham Act, 15 U.S.C. § 1051, et seq., for trademark infringement, unfair competition, and false advertising. Doc. 1 at ¶¶ 74–92. A "trademark" includes "any word, name, symbol, or device, or any

combination thereof (1) used by a person or (2) which a person has a bona fide intention to use in commerce and applies to register[.]" 15 U.S.C. § 1127. Under Section 32(a) of the Lanham Act, a trademark registrant may sue for trademark infringement any person who, without the consent of the registrant, uses in commerce a "reproduction, counterfeit, copy, or colorable imitation of a registered mark" that causes or is likely to cause confusion. 15 U.S.C. § 1114(1). Under Section 43(a), a person may sue for unfair competition another person who uses in interstate commerce "any word, term, name, symbol, of device, or any combination thereof . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that causes or is likely to cause confusion about the affiliation, connection, or association of that person with another person or the origin, sponsorship, or approval of the person's goods or services. 15 U.S.C. § 1125(a).

"Section 32(a) creates a cause of action for the infringement of a registered mark, whereas § 43(a) protects qualifying unregistered trademarks." *Tana v. Dantanna's*, 611 F.3d 767, 773 n.5 (11th Cir. 2010) (explaining that the standard for determining a likelihood of confusion is the same for both claims). Thus, if a plaintiff alleges facts sufficient to state a claim under Section 32(a), the same facts state a claim under Section 43(a). "This is because Section 1125(a) is broader than Section 1114 in that it covers false advertising or description whether or not it involves trademark infringement." *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994).

9

A claim for infringement under Section 32(a) requires factual allegations showing (1) that the defendant used a valid mark belonging to the plaintiff without the plaintiff's consent, (2) that the defendant used the mark "in commerce," and (3) that "the unauthorized use was likely to cause confusion, to cause mistake, or to deceive." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008); *Bentley Motors Corp. v. McEntegart*, 976 F. Supp. 2d 1297, 1310 (M.D. Fla. 2013). In determining the likelihood of confusion, courts consider (1) the strength of the mark, (2) the similarity between the plaintiff's mark and the defendant's infringing mark, (3) the similarity in products and sales method, (4) the similarity in advertising methods, (5) the defendant's intent, and (6) actual confusion. *Axiom*, 522 F.3d at 1220.

Here, the plaintiffs allege that they own the DDG mark and provide the certificate of registration for that mark. Doc. 1 at ¶ 17; Doc. 1-1. They provide both factual allegations and a sworn declaration supporting the strength of the mark. Doc. 1 at ¶¶ 14–15; Doc. 27-1 at ¶¶ 2–4. Furthermore, the plaintiffs allege facts showing the defendants' unauthorized use of the mark for the purpose of marketing services independent of DDG India. Doc. 1 at ¶¶ 45–63. These services directly competed with the plaintiffs and involved the same advertising and sales methods. Doc. 1 at ¶¶ 45–50, Docs. 1-1, 1-8. The plaintiffs provide documents showing that the mark used by the defendants is identical to the plaintiffs' mark. Doc. 1-11, 1-12. The plaintiffs allege facts showing actual confusion of an existing customer and the defendants' intent to deceive both the plaintiffs and the plaintiffs' customers. Docs. 1

at ¶¶ 51–71, 1-14. Accordingly, the factual allegations of the complaint, which by their default the defendants admit, support a default judgment on counts one and two.

## 2. The plaintiffs are entitled to statutory damages for willful infringement and injunctive relief.

The plaintiffs seek damages for willful infringement, as well as injunctive relief. Under 15 U.S.C. § 1117(e), a rebuttable presumption of willfulness occurs if the violator, or a person acting in concert with the violator, "knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the violation." A court may also infer willfulness from default and from continued infringement despite receiving notice. *Kobe Japanese Steak House of Fla., Inc. v. XU, Inc.*, No. 8:14-CV-490-T-23MAP, 2014 WL 6608967, at *4 (M.D. Fla. Nov. 20, 2014). In a case involving the use of a counterfeit mark, a plaintiff may elect to recover statutory damages rather than pursuing actual damages. 15 U.S.C. § 1117(c). For a willful violation, a plaintiff may recover no more than $2,000,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c).

A "counterfeit" is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. "The only material distinction between the standard for federal trademark counterfeiting and the

standard for showing trademark infringement is that in order to obtain treble or statutory damages for a counterfeiting claim, a plaintiff must show the defendant intentionally used plaintiff's trademark, knowing it was a counterfeit." *Kobe*, 2014 WL 6608967, at *4.

The complaint contains sufficient factual allegations to show that the defendants intentionally used a mark substantially indistinguishable from the plaintiffs' mark. Doc. 1 at ¶ 46, ¶ 63, ¶ 64, ¶ 68. The complaint further alleges that Babu and Aboobacker registered two domain names incorporating the DDG mark. Doc. 1 at ¶ 47–50, Doc. 1-12. The plaintiffs allege that the defendants have re-directed DDG India's web domain to the unauthorized domain for their competing website. Doc. 1 at ¶ 50. Additionally, the plaintiffs provide e-mail correspondence in which Aboobacker acknowledged using the DDG domain after he and Babu no longer worked for DDG India. Doc. 1-14 at 3. Finally, even in the absence of a presumption, the allegations of continued infringement despite notice support an inference of willfulness. Doc. 1 at ¶¶ 68–71; *Kobe*, 2014 WL 6608967, at *4. Accordingly, the plaintiffs allege facts supporting a finding of willfulness.

The plaintiffs seek the statutory maximum award of $2,000,000 and provide a declaration from the plaintiff Hung Phi Duong in support of that request. Doc. 27-1. Duong attests that the plaintiffs incurred $914,848.67 in expenses between May 2019 and February 2022 to expand their business in India. Doc. 27-1 at ¶ 8. As a result of the defendants' conduct, Duong says that he and his wife have lost that monetary investment, as well as the confidential information provided to Babu and

Aboobacker, including client lists and operational strategy. Doc. 27-1 at ¶ 11. Duong adds that they "have lost multiple business opportunities since February 2022 to present" because Babu and Aboobacker continue operating the two businesses that the plaintiffs paid to develop. Doc. 27-1 at ¶ 11. Based on their historical revenue in the United States and in Vietnam, Duong says that the plaintiffs would have earned revenue of three to four times their expenses or between $2.7 million and $3.6 million between February 2022 and January 2025. Doc. 27-1 at ¶ 13.

The admitted factual allegations, together with the evidence provided by the plaintiffs, support an award of statutory damages of $2,000,000. This amount has both a legitimate basis and substantial support in the record and accomplishes the dual goals of compensation and deterrence. *Kobe*, 2014 WL 6608967 at *4-5.

As for injunctive relief, the plaintiffs seek a permanent injunction restraining the defendants from using the plaintiffs' mark and compelling the transfer of the infringing domain names, as well as the social media accounts, to the plaintiffs who are the "rightful owners." Doc. 27 at 13. An injunction is warranted when a plaintiff establishes (1) a substantial likelihood of success on the merits; (2) an imminent or ongoing irreparable harm; (3) a balance of harm favoring an equitable remedy; and (4) a supporting public interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *Axiom*, 522 F.3d at 1217. A presumption of irreparable harm exists in trademark infringement cases if a plaintiff establishes a likelihood of success on the merits. *Axiom*, 522 F.3d at 1227.

13

Here, the plaintiffs establish their entitlement to a permanent injunction. The defendants, by default, are liable for willful trademark infringement. They fail to defend this case and, according to the plaintiffs, continue to infringe the plaintiffs' mark despite notice from the plaintiffs and a preliminary injunction from an Indian court. Doc. 1 at ¶¶ 70, 73; Doc. 27-1 at ¶ 11. Thus, absent an injunction, the defendants will continue to infringe and cause irreparable harm to the plaintiffs. The balance of harm favors an equitable remedy. According to the complaint, Babu and Aboobacker were trusted company insiders who surreptitiously stole the plaintiffs' intellectual property, traded on the plaintiffs' goodwill, and deceived customers into thinking their competing business was the plaintiffs' business. The public interest favors protecting the plaintiffs' property from this kind of calculated theft and protecting customers from confusion and deception about the source and quality of the engineering services they are purchasing.

### b. The plaintiffs are entitled to an injunction for misappropriation of trade secrets.

Count three alleges a claim under 18 U.S.C. § 1836, which provides a private right of action for damages and injunctive relief based on the misappropriation of trade secrets. Defined broadly, a "trade secret" means "all forms and types of financial, business, scientific, technical, economic, or engineering information . . . whether tangible or intangible" if the owner shows "reasonable measures to keep such information secret" and "independent economic value, actual or potential, from not being generally known[.]" 18 U.S.C. § 1839(3). "Misappropriation" means "use

of a trade secret of another without express or implied consent" by a person who "knew or had reason to know" that the person acquired the information "under circumstances giving rise to a duty to maintain the secrecy of the trade secret."18 U.S.C. § 1839(5)(B)(ii). Thus, to state a claim under Section 1836, a plaintiff must "plausibly allege that it (i) 'possessed information of independent economic value' that (a) 'was lawfully owned by' the plaintiff and (b) for which the plaintiff 'took reasonable measures to keep secret,' and (ii) the defendant 'used and/or disclosed that information," despite (iii) 'a duty to maintain 'its secrecy.'" *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1293 (M.D. Fla. 2018). The statute applies to conduct outside the United States if "an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837.

The plaintiffs allege that, over nearly twenty years, they developed "trade secret" information including information about clients, operations, marketing strategies and business development, pricing, as well as skills, responsibilities, and compensation of employees. Doc. 1 at ¶ 19. They allege "reasonable steps to maintain the confidentiality" of this information by disclosing the information only to "key personnel." Doc. 1 at ¶¶ 19–20. As management employees of DDG India, the defendants became privy to the plaintiffs' trade secrets and had reason to know of their duty to maintain the secrecy of that information. Doc. 1 at ¶ 36. Nonetheless, the plaintiffs used this information without the plaintiffs' knowledge to form a competing company, which they eventually expanded to the United States. Doc. 1 at ¶¶ 45, 51.

By defaulting, the defendants admit these factual allegations, which establish liability for misappropriation of trade secrets. The plaintiffs seek an injunction compelling the defendants to transfer control to the plaintiffs of any online accounts containing trade secret information and to destroy all copies of the plaintiffs' trade secret information. Docs. 1 at ¶ 106; Doc. 27 at 15. As explained above, the plaintiffs establish entitlement to an injunction, and the requested relief appears to comport with the remedies available under Section 1836(b)(3).

### c. Breach of contract

#### 1. The factual allegations support a default judgment.

Count four alleges a breach of contract based on the agreement by Babu and Aboobacker to transfer ownership of DDG India to the plaintiffs once they registered the company in India.  Under California law, "[t]he elements of a cause of action for breach of contract are: '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.'" *Coles v. Glaser*, 205 Cal. Rptr. 3d 922, 927 (Cal. Dist. Ct. App. 2016). An enforceable contract requires mutual consent and consideration. *See* CAL. CIV. CODE § 1550. "Mutual consent" is "generally achieved through the process of offer and acceptance." *DeLeon v. Verizon Wireless, LLC*, 143 Cal. Rptr. 3d 810, 821 (Cal. Dist. Ct. App. 2012) (internal citations omitted); *see also* CAL. CIV. CODE § 1580. The terms of an agreement "must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Ladas v. Cal. State Auto. Ass'n*, 23 Cal.

Rptr. 2d 810, 814 (Cal. Dist. Ct. App. 1993) (citations omitted). "Consideration is present when the promisee confers a benefit or suffers a prejudice" that is bargained for in exchange for a promise. *Prop. Cal. SCJLW One Corp. v. Leamy*, 236 Cal. Rptr. 3d 500, 508 (Cal. Dist. Ct. App. 2018).

The complaint contains allegations and attachments describing an agreement between Duong, Babu, and Aboobacker to transfer ownership of DDG India to Duong after registering the company in India. Doc. 1 at ¶ 108; Docs. 1-3, 1-4. On May 8, 2019, Babu e-mailed Duong a detailed "Budget Proposal" for Duong's investment in DDG India containing details of a new office in India; an organizational chart listing Duong as the Managing Director in charge of the new Indian entity, Aboobacker as the Branch Manager, and Babu as the Project Manager; and Aboobacker's and Babu's credentials and proposed salaries. Doc. 1 at ¶¶ 25-26; Doc. 1-2. In meetings on May 11 and May 13, 2019, the parties discussed Babu and Aboobacker registering the company in their own names and "later" transferring ownership to Duong. Doc. 1-3. Babu followed the May 13 meeting with a contemporaneous e-mail saying, "Kindly note that as we have to quickly start our company, [i]nitially, [w]e are going to register our company on Anitha's and Sharath Name (Minimum 2 Indian director required.) Later we will transfer the ownership to Mr. Phill's name as agreed by you." Doc. 1-4. Babu added that "If you have to start your current company's branch office here, it's a lengthy procedure and you will have to submit 'A-Z' documents of yours as well as your partners." Doc. 1-4 at 2. The following day, Duong sent Babu and Aboobacker employment offers, thanked

them for joining DDG India and for "helping us to establish a satellite office in India," and offered each a monthly salary. Doc. 1-5.

Aboobacker and Babu registered DDG India BIM in June 2019 with India's Ministry of Corporate Affairs, accepted the plaintiffs' full-time employment offer, and managed DDG India, including the plaintiffs' India-based assets and personnel. Doc. 1 at ¶¶ 33–34. The plaintiffs' relied on Aboobacker and Babu's assurances and invested nearly $1 million in "tangible property, including signage, office furniture, office space (rent), computers, software licenses, and other business assets, as well as . . . intangible property, including labor (salaries and benefits), Trade Secret, trademarks, and goodwill." Doc. 1 at ¶ 34. The plaintiffs wrote to the defendants in November 2019 requesting the transfer of ownership. Doc. 1 at ¶ 110. Instead of transferring ownership, Aboobacker and Babu retained DDG India, defrauded the plaintiffs of nearly $1 million in assets, infringed on the plaintiffs' trademark, stole the plaintiffs' trade secrets, and created a Florida-based LLC to further their scheme. Doc. 1 at ¶¶ 31–70, ¶ 111.

These facts, which the defendants admit by defaulting, provide a sufficient factual basis for a breach of contract claim. They demonstrate mutual assent to transferring ownership of DDG India to Duong and consideration for that assent in the form of Babu and Aboobacker's employment with DDG India and Duong's avoiding a lengthy corporate registration process. Although the parties' agreement describes no exact date for the transfer, the terms of the agreement suggest that Babu and Aboobacker's ownership was a temporary, "initial" step to start the company

18

after which Babu and Aboobacker would transfer ownership. CAL. CIV. CODE § 1657 ("If no time is specified for the performance of an act required to be performed, a reasonable time is allowed."); *Tiffany Builders, LLC v. Delrahim*, 315 Cal. Rptr. 582, 588 (Cal. Dist. Ct. App. 2023) ("If feasible, courts construe agreements to carry out the reasonable intention of the parties.") The defendants breached the agreement by failing to transfer ownership of DDG India, which resulted in the plaintiffs' suffering substantial monetary damages exceeding their nearly $1 million investment in the Indian operations. *See Coles*, 205 Cal. Rptr. 3d at 927; Doc. 1 at ¶¶ 111; Doc. 27 at 17.

## 2. The plaintiffs are entitled to damages and specific performance.

The plaintiffs request expectation damages of between $2.7 and $3.6 million, which is an estimate of the plaintiffs' losses between February 2022 and January 2025. Doc. 27-1 at ¶ 13. These losses also serve as the basis for the plaintiffs' claim to the maximum available statutory damages of $2 million under 15 U.S.C. § 1117. Doc. 27 at 11–12. To the extent that the statutory and breach of contract damages serve a similar purpose—to compensate the plaintiff for their losses—the plaintiffs would receive a double recovery. *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 333 (1980) ("[C]ourts can and should preclude double recovery by an individual."); *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1203–04 (11th Cir. 2009). However, while expectation damages aim to return a party to the position the party would have occupied absent the breach,

statutory damages under the Lanham Act aim both to compensate the trademark owner and to deter further infringement. *Katz Deli of Aventura, Inc. v. Waterways Plaza, LLC*, 183 So. 3d 374, 379 (Fla. 3d DCA 2013); *Bentley*, 2014 WL 408375 at *5. Furthermore, here the plaintiffs' actual damages far exceed the statutory cap under the Lanham Act. Accordingly, an award of expectation damages for breach of contract is not duplicative of statutory damages for trademark infringement.

In addition to damages, the plaintiffs seek specific performance of their agreement with the defendants. They request an order directing Babu and Aboobacker to transfer ownership of DDG India to the plaintiffs as contemplated by the parties' agreement. Doc. 27 at 17. An order of specific performance is warranted if "'the plaintiff is clearly entitled to it, . . . there is no adequate remedy at law, and . . . the judge believes that justice requires it.'" *Travelers Cas. & Sur. Co. of Am. v. Indus. Com. Structures, Inc.*, No. 6:12-CV-1294-ORL-28, 2012 WL 4792906, at *2 (M.D. Fla. Oct. 9, 2012) (quoting *Invego Auto Parts, Inc. v. Rodriguez,* 34 So. 3d 103, 104 (Fla. 3d DCA 2010)).

Based on the admitted factual allegations, the plaintiffs are entitled to ownership of DDG India under their agreement with the defendants. The plaintiffs further demonstrate that no adequate remedy at law exists. The defendants continue operating DDG India and a competing business that infringes the plaintiffs' trademarks and derives from a misappropriation of the plaintiffs' trade secrets. Accordingly, this Court should order specific performance of the agreement to transfer DDG India to the plaintiffs.

### d. Civil conspiracy

A civil conspiracy consists of an agreement between two or more people to either (1) commit an unlawful act or (2) commit a lawful act by unlawful means and involves "some overt act in furtherance of the conspiracy" that results in damages to the plaintiff. *In re Harris*, 3 F.4th 1339, 1350–51 (11th Cir. 2021). "[A]n actionable conspiracy requires an actionable underlying tort or wrong." *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. Dist. Ct. App. 2006). "Conspiracy is not a separate or independent tort but is a vehicle for imputing the tortious acts of one coconspirator to another to establish joint and several liability." *Lorillard Tobacco Co. v. Alexander*, 123 So. 3d 67, 80 (Fla. Dist. Ct. App. 2013).

Under the "intracorporate conspiracy doctrine," an entity cannot conspire with its officers or agents because a conspiracy requires "'a meeting of two independent minds intent on one purpose.'" *Weisman v. Southern Wine & Spirits, Inc.*, 297 So. 3d 646, 652 (Fla. 4th DCA 2020) (quoting *Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 1991)). An agent acting in the scope of his employment works on behalf of the corporation, "thereby negating the multiplicity of actors needed for a conspiracy." *Id.* However, an agent acting for his own and not corporation's interest has a "personal stake" sufficient to support a conspiracy. *Id.*

The plaintiffs allege that the defendants conspired to infringe the plaintiffs' trademarks, steal the plaintiffs' trade secrets, interfere with the plaintiffs' business relationships, and misappropriate business assets. Doc. 1 at ¶ 122–25. Based on the

factual allegations of the complaint, as explained above, the plaintiffs demonstrate both the elements of a civil conspiracy and underlying acts of both trademark infringement and misappropriation of trade secrets. Thus, a default judgment is warranted on this count, and the defendants may be held jointly and severally liable.

### e. Attorney's fees and costs.

The Lanham Act permits an award of reasonable attorney's fees "in exceptional cases." 15 U.S.C. § 1117(a). An "exceptional case" is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018). A district court possesses discretion to determine whether a case is "exceptional" under the circumstances. *Octane*, 572 U.S. at 554. Factors to consider include "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in the particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6. A case may qualify as "exceptional" even when the defendant fails to appear and defend. *Simple Minds Ltd. v. Individuals, Partnerships, & Unincorporated Associations Identified on Schedule "A"*, No. 23-CV-22219-RAR, 2023 WL 6121901, at *7 (S.D. Fla. Sept. 19, 2023).

The plaintiffs argue that the defendants' willful, "brazen," and "unremorseful" infringement of the plaintiffs' mark renders this case "exceptional." Doc. 27 at 20. I

agree. Convinced of the potential for foreign expansion, the plaintiffs relied on two trusted individuals—Babu and Abookbacker—to establish their presence in India. The admitted facts show that, shortly after the plaintiffs invested nearly a million dollars into the expansion, the defendants abused that trust and covertly created a competing company using the substantial investment, employees, and goodwill of the plaintiffs. Despite legal action here and in India, the defendants continue to profit from a company, a trademark, and trade secrets that do not belong to them. Accordingly, I agree that the plaintiffs are entitled to an award of fees under Section 1117(a).

The plaintiffs seek an award of $477 in costs, which consists of the $402 filing fee and $75 for service of process. Doc. 27 at 19-20. Rule 54(d)(1), Federal Rules of Civil Procedure, provides that costs "should be allowed to the prevailing party." The categories of recoverable are those delineated in 28 U.S.C. § 1920. *Arcadian Fertilizer, L.P., v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001). Those include fees of the clerk and marshal. 28 U.S.C. § 1920(1). "Fees of the . . . marshal" include fees for serving a subpoena. 28 U.S.C. § 1921(a)(1)(B). The fee of a private process server may not exceed fee authorized for the marshal. *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). The marshal may charge as much as $65.00 an hour ("or portion thereof") for each item personally served, plus travel costs and other out-of-pocket expenses. 28 C.F.R. § 0.114(a)(3), (4). Therefore, the plaintiffs may recover $65 for service of process and $402 for the filing fee, which amounts to $467 in costs.

## IV.    CONCLUSION

Accordingly, as described above, the plaintiffs are entitled to a default judgment on counts one through four and seven. I recommend entering a judgment in favor of the plaintiffs and against the defendants, jointly and severally, in the amount of $4,700,467, which consists of $2 million in statutory damages and $2.7 million in contractual damages, plus $467 in costs. Additionally, the order should permanently enjoin the defendants from using the DDG mark, direct the defendants to destroy all copies of the plaintiffs' trade secret information in the defendants' possession, and compel the defendants to transfer to the plaintiffs (1) ownership of DDG BIM Services Pvt., Ltd.; (2) all infringing domain names and social media accounts; (3) all online accounts containing the plaintiffs' trade secret information; and (4) all company assets paid for by the plaintiffs. Finally, the order should (1) dismiss without prejudice counts five and six and (2) direct the plaintiffs to file a supplemental motion on the amount of fees under Local Rule 7.01(c) no later than forty days after the day of the order.

**REPORTED** on this 13th day of March, 2025.

LINDSAY S. GRIFFIN
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from the day of service of this report either to file written objections to the proposed findings and recommendation or to seek an extension of the fourteen-day deadline. 28 U.S.C. § 636(b)(1)(C). Under Eleventh Circuit Rule 3-1, a party failing to object to a magistrate judge's findings or recommendations "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). If the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.