# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

## Case No. 8:23-cv-01551-KKM/LSG

HUNG PHI DUONG, and
KIM NHUNG THI NGUYEN
d/b/a DDG Digital Design Group,

     Plaintiffs,

v.

DDG BIM SERVICES LLC,
a Florida limited liability company,

DDG BIM SERVICES PVT. LTD.,
a Republic of India company,

DDG ENGINEERING SERVICES PVT. LTD.,
a Republic of India company,

SARATH BABU,
a/k/a Premarajan Geetha Sarath Babu,
a/k/a Sharath Babu PG, and

SHAMLA ABOOBACKER,
a/k/a Anitha Manoj,
a/k/a Anithamanu,

     Defendants.

_____

## PLAINTIFFS' MEMORANDUM OF LAW REGARDING PERSONAL JURISDICTION OVER DEFENDANTS, PURSUANT TO THE COURT'S ORDER [DE 31]

Plaintiffs, Hung Phi Duong and Kim Nhung Thi Nguyen, pursuant to the Court's order, [DE 31] submit this memorandum of law establishing how the Court has personal jurisdiction over the five defendants in this action.

As a threshold matter, plaintiffs object to the order insofar as it might be viewed as requiring the plaintiffs to argue against a non-raised affirmative defense by non-appearing defendants, all of which have had adequate notice of this action. Personal jurisdiction can be waived, and it is unlike subject matter jurisdiction which a federal court must always ensure it has. The same is not true for personal jurisdiction. Nevertheless, plaintiffs show that there is jurisdiction of each of the defendants.

While the order requested plaintiffs to "focus their attention on" the individual defendants "with respect to Count 4," they take the opportunity to broadly address the concept of personal jurisdiction under an original, textual understanding of the Fifth Amendment.

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................4

ARGUMENT .........................................................................5

I.    THIS COURT HAS PERSONAL JURISDICTION BASED ON THE TRADITIONAL FRAMEWORK OF *INTERNATIONAL SHOE* AND ITS PROGENY ...........................................................6

    A.    The Florida Long-Arm Statute........................................7

        1.    *Tort-based personal jurisdiction* ......................................7

        2.    *Conspiracy-based jurisdiction* ...........................................9

        3.    *Carrying on a business and agency-based jurisdiction*........................................................................13

        4.    *Pendent personal jurisdiction – Counts 4-6* ....................14

    B.    Constitutional Due Process ...........................................16

        1.    *Minimum Contacts* ..........................................................17

        2.    *Fair play and substantial justice* ....................................20

II.    THE COURT HAS PERSONAL JURISDICTION OVER THE INDIA DEFENDANTS UNDER THE FEDERAL LONG-ARM LAW, RULE 4(K)(2) ....................20

CONCLUSION......................................................................28

## INTRODUCTION

This action concerns a vast and interconnected web of corporate entities and two key individuals behind them—all conspiring (and so far succeeding) to take control of a small business in the United States.

This case does not implicate claims directed to a defendant residing in another state, but concerns one Florida limited liability company, two foreign businesses and two foreign individuals. Florida has been their domestic point of entry to the U.S. through which they have collectively established a formal U.S. presence, and together with their unlawful activities have caused substantial harm to plaintiffs. Consequently, an analysis of personal jurisdiction must be understood within a federal, not state, context for the Court's authority over the five defendants.

Plaintiffs also note that existing *in personam* jurisdiction jurisprudence may not provide adequate guidance given that at least some justices have stated it has become "increasingly doubtful." Ford Motor Co. v. Montana Eighth Judicial Dist. Ct., 141 S. Ct. 1017, 1034 (2021) (Gorsuch, J., concurring, joined by Thomas, J.); id. at 1032 (agreeing with "Justice Gorsuch's thoughtful opinion, [that] there are grounds for questioning the standard that the Court adopted in

International Shoe") (Alito, J., concurring). They question whether it is even a plaintiff's "burden of proving personal jurisdiction" which they suggest "is often mistaken" because not only is "lack of personal jurisdiction[] a waivable affirmative defense, some States place the burden of proving the defense on the defendant." Id. at 1036, n.1. They openly questioned "how we got here and where we might be headed." Id. They further suggested the claim-by-claim approach to personal jurisdiction is open to reconsideration. Id. (a "State's courts were generally thought competent to render judgment on any claim against the defendant, whether it involved events inside or outside the State") (citing Pennoyer v. Neff, 95 U. S. 714, 733 (1878)); see also id. at 1037 ("a present company could be sued for any claim").

In no uncertain terms, they have invited "future litigants and lower courts [to] help us face these tangles and sort out a responsible way to address the challenges posed by our changing economy in light of the Constitution's text and the lessons of history." Id. at 1039.

## ARGUMENT

This Court has jurisdiction *in personam* not only of the Florida-based limited liability company defendant, but also the four India-based

defendants. It has that authority both under the existing <u>International Shoe</u> framework, as well as what plaintiffs argue is the correct understanding of federal court personal jurisdiction over wholly foreign, non-U.S. persons and entities.

## I.    THIS COURT HAS PERSONAL JURISDICTION BASED ON THE TRADITIONAL FRAMEWORK OF <u>*INTERNATIONAL SHOE*</u> AND ITS PROGENY

In this action, plaintiffs have pleaded both federal and state law claims, including Lanham Act, DTSA, breach of contract, conversion, and civil conspiracy. A federal court has "personal jurisdiction over a defendant" when they are "subject to the jurisdiction of a court of general jurisdiction in the state with the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Florida has established a long-arm statute to reach non-resident defendants and subject them to the jurisdiction of its courts. Where jurisdiction is based on a federal question arising under a federal statute, and that statute is silent regarding service of process, then Federal Rule of Civil Procedure 4(k) determines whether a federal court has personal jurisdiction over a defendant. The Lanham Act does not provide nationwide service of process. <u>Licciardello v. Lovelady</u>, 544 F.3d

1280, 1283 (11th Cir. 2008).

## A. The Florida Long-Arm Statute

The Florida long-arm statute, § 48.193, "bestows broad jurisdiction on Florida courts." Internet Solutions Corp. v. Marshall, 39 So. 3d 1201, 1215 (Fla. 2010). That jurisdiction extends to torts committed in Florida, and reaches non-resident defendants that jointly participate in that conduct.

### 1. Tort-based personal jurisdiction

Under Section (1)(a)2., a defendant is subject to personal jurisdiction of a Florida court if it commits "a tortious act within this state." Fla. Stat. § 48.193(1)(a)2. (2024). The tort does not need to be an intentional one. Id.

Committing trademark infringement is one such tort allowing Florida courts to exercise jurisdiction over foreign defendants. Moccio v. The BossBabe Societe, Inc., no. 8:21-cv-0210-KKM-AEP, 2021 WL 4847034 (M.D. Fla. 2021). For tort-based specific jurisdiction a plaintiff "need only show that the defendant's contact with the State resulted in … a tortious act." Gerber Trade Fin., Inc. v. Bayou Dock Seafood Co., 917

So.2d 964, 967 (Fla. Dist. Ct. App. 2005). Florida courts have repeatedly held that the tortfeasor's physical presence in Florida is not required. E.g., Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002) (rejecting claim that Michigan attorney's purportedly Michigan-based conduct did not occur in Florida). Jurisdiction is entirely proper where an out-of-state defendant commits a tort that produces an injury in the forum. Wendt, 822 So. 2d at 1260.

Counts 1 through 3 alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and the Defend Trade Secrets Act, 18 U.S.C. § 1836. Compl. [DE 1]. Defendants Aboobacker and Babu caused an entity to be formed within the Middle District of Florida with an infringing name: co-defendant DDG BIM Services, LLC. [DE 1 at ¶ 51]. That domestic entity was created for the purpose of extending the overseas activities of defendants DDG BIM Services and DDG BIM Engineering, both of which were likewise controlled exclusively by defendants Aboobacker and Babu. And each count is against each of the five defendants. Id. Both the trademark infringement and trade secret misappropriation occurred in this state through co-defendant DDG BIM Services, LLC, including by the mere act of registering the entity by defendants Aboobacker and Babu

that infringed by virtue of its name, as well as the Florida-based entity receiving the benefit of the trade secret information used in unlawful competition with plaintiffs and through the use of cloud storage services based in the United States. [DE 1 at ¶¶ 102-103]. Their joint tortious conduct therefore occurred within this state.

Additionally, plaintiffs allege the formal organization of a domestic limited liability company was an extension of the defendants' collective action on behalf of the India-based limited companies, defendants DDG BIM Services Pvt. Ltd. and DDG BIM Engineering Services Pvt. Ltd.

### 2. *Conspiracy-based jurisdiction*

The India defendants are also subject to specific personal jurisdiction under the tort provision of Florida's long-arm statute as a consequence of the conspiracy among them, and Aboobacker and Babu in particular.

As part of tort-based conduct under the long-arm statute, Florida courts hold that foreign defendants that engage in a conspiracy, a portion of which is conducted within the state, are subject to jurisdiction of the state's courts. NHB Advisors, Inc. v. Czyzyk, 95 So. 3d 444, 447 (Fla. Dist.

Ct. App. 2012); accord Amersham Enters., Inc. v. Hakim-Daccach, 333 So. 3d 289, 296 (Fla. Dist. Ct. App. 2022). In Czyzyk, the defendants were former officers and directors of a company, against which they had conspired "to structure a competing entity" with the aid of "confidential information" they obtained. Id. at 446-47. The plaintiff's pleading alleged personal jurisdiction was proper over the foreign individual defendant, Czyzyk, because he had "committed a tortious act within" Florida, namely engaging in an act in furtherance of the conspiracy. Id. at 447. The trial court granted Czyzyk's motion to dismiss for lack of personal jurisdiction. Id. at 448. The state appellate court reversed, stating

> if a plaintiff has successfully alleged a cause of action for conspiracy among the defendants to commit tortious acts toward the plaintiff, and if the plaintiff has successfully alleged that any member of that conspiracy committed tortious acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to the jurisdiction of Florida through its long-arm statute.

Czyzyk, 95 So. 3d at 448. That is equally true here.

Further, physical presence in Florida is not required to satisfy § 48.193(1)(b). Id. Rather, it is "whether the nonresident defendant 'committed a substantial aspect of the alleged tort in Florida." Id.

(quoting <u>Watts v. Haun</u>, 393 So. 2d 54, 56 (Fla. Dist. Ct. App. 1981); <u>see</u> <u>also</u> <u>N. Am. Sugar Indus. v. Xingjiang Goldwind Sci. & Tech. Co.</u>, 124 F. 4th 1322 (11th Cir. 2025) (reversing dismissal of claims against foreign defendants sued on a claim of conspiracy to engage in Helms-Burton trafficking through a brief stop of two cargo ships in a U.S. port destined for Cuba).

Here, plaintiffs have alleged with specificity numerous acts of defendants Aboobacker and Babu respecting their joint conspiratorial efforts to take plaintiffs' business, including secretly incorporating a competing entity (co-defendant DDG Engineering Services Private, Ltd.) with the intent "to siphon away and steal plaintiffs' existing and future customers, and to create a confusingly similar entity" to infringe on plaintiff's mark, [DE 1 at ¶ 45], secretly registering an infringing domain name, [DE 1 at ¶ 47], all with the goal of defrauding and stealing away plaintiffs' clients and directly compete with plaintiffs for new business, [DE 1 at ¶ 48]. Plaintiffs further specifically alleged that defendants Aboobacker and Babu personally organized the U.S.-based co-defendant, DDG BIM Services, LLC, "to falsely legitimize their fraud and to compete with plaintiffs directly on US soil." [DE 1 at ¶ 51]. Those allegations,

including the breach of contract claim, are incorporated into the broader conspiracy claim. [DE 1 at 32] (reincorporating all prior allegations and alleging civil conspiracy among all five defendants). All of this is borne out not only by the allegations of the verified complaint, but also the exhibits thereto. [DE 1-3 at 3] (we "will transfer ownership to Mr.Phill" of "the Indian operation of DDG"); [DE 1-4 at 2] ("we will transfer the ownership to Mr.Phill's name).

Because the defendants collectively engaged in tortious conspiratorial conduct in Florida, in furtherance of their joint effort to wrongfully obtain plaintiffs' business by conversion and breach of contract, their persons are all subject to the jurisdiction of this state. Cf. Czyzyk, 95 So. 3d at 449 (finding, alternatively, that "regardless of whether Czyzyk *personally* committed any tortious acts within the state of Florida, the plaintiff alleged with sufficient specificity that Czyzyk took part in a conspiracy where other principles committed tortious acts in Florida") (emphasis in original).

Plaintiffs' allegations here support this Court's personal jurisdiction over the four India defendants pursuant to Florida Statute 48.193(1)(a)2. because they perpetuated their conspiracy to

illegally convert plaintiffs' business to their own and infringe on plaintiffs' trademark rights. <u>Czyzyk</u>, 95 So.3d at 448.

### 3. *Carrying on a business and agency-based jurisdiction*

Separately, defendants Aboobacker and Babu, as the two members of the Florida-based LLC, were personally carrying on a business in Florida in substantial and not isolated way that would subject them to the Court's personal jurisdiction pursuant to § 48.193(1)(a)1. and (2), Fla. Stat. Their conduct continues notwithstanding the administrative dissolution of their Florida-based LLC. See https://www.linkedin.com/company/ddg-bim-services-pvt-ltd/about/ (showing two locations, one in Florida and the other in India); https://www.linkedin.com/company/ddg-bim-services-pvt-ltd/posts/?feedView=all (showing recent posts by defendants, accessible in Florida, including video post showing plaintiffs' computing and office equipment continuing to be used by the defendants). It is neither unreasonable nor unfair to reach a foreign shareholder who owns a shell American corporation "that engages in wrongful conduct for which the foreign shareholder may potentially be held liable on an alter ego theory."

Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 421 (9th Cir. 1977) (finding personal jurisdiction over foreign shareholder that operated a Nevada entity under an infringing name).

### 4. *Pendent personal jurisdiction – Counts 4-6*

With respect to the remaining counts alleging breach of contract, breach of the duty of good faith and fair dealing, and conversion, federal courts enjoy pendent personal jurisdiction over foreign defendants respecting state law claims when joined together with federalizing ones, provided they arise "from the same jurisdiction generating event." Cronin v. Washington Nat. Ins. Co., 980 F.2d 663, 671 (11th Cir. 1993); see also RMS Titanic, Inc. v. Kingsmen Creatives, Ltd., 579 F. Appx. 779, 788 (11th Cir. 2014) (examining whether "jurisdiction generating event" of transmitting trade secrets in Florida was event giving rise to other counts of conversion).

As argued *supra*, all five defendants are properly within the scope of Florida's long-arm statute as having committed torts in this state respecting trademark infringement, misappropriation of trade secrets, and conspiracy to commit those wrongs and the wrongs embodied in the

other claims. The remaining claims respecting conversion, breach of contract, breach of the duty of good faith and fair dealing directed only to defendants Aboobacker and Babu (Counts 4 through 6) are claims that do not have parties-defendant different from ones over which the Court already has jurisdiction over their persons.

Where "the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction-generating event." Thomas v. Brown, 504 F.App'x 845, 847 (11th Cir. 2013) (citing Cronin, 980 F.2d at 671).

As plaintiffs allege, all of their claims are intimately related as a collective scheme perpetrated by defendants Aboobacker and Babu through the three juristic defendants, causing them significant damages and ongoing harm in the form of unrestrained trademark infringement and the defendants' ongoing efforts to fully take over what remains of plaintiffs' business. Their effort to combat that ongoing harm will continue to be of marginal success until the Court enters an order allowing final process to issue. As the pleading makes clear, plaintiffs' claims are not distinct, standalone theories of recovery premised on

independent acts and aggregated together, but rather all arising out of the concerted, deliberate, and coordinated conduct of the defendants' scheme to injure a long-established U.S. small business.

## B. Constitutional Due Process

As <u>Ford Motor</u> illustrates, the continuing vitality of "minimum contacts" rubric is questionable, and is an open question of whether the Fifth Amendment even embodies such an analysis respecting foreign defendants. That issue is presently before the high court this term, with a decision likely to be handed down in the next eight weeks. <u>Fuld v. Palestine Liberation Org.</u>, no. 24-20. Plaintiffs here argue similarly to petitioners there, that the minimum contacts framework is not part of a Fifth Amendment analysis for purposes of personal jurisdiction over alien, non-U.S. defendants.

Even under the existing framework, the Supreme Court has "eschewed any 'mechanical or quantitative' test" respecting due process in favor of "a flexible approach" focused on fairness. <u>Mallory v. Norfolk S. Ry. Co.</u>, 600 U.S. 122, 139 (2023) (plurality opinion) (quoting <u>International Shoe</u>, 326 U.S. at 319). "The limits of State power are

defined in view of the relation of the States to each other in the Federal Union," but the federal government's power "in relation to other countries and their subjects" is not confined by that structural principle. Burnet v. Brooks, 288 U.S. 378, 401, 406 (1933). Assuming any part of the U.S. Constitution plays a role in an analysis of a domestic court's personal jurisdiction over wholly foreign defendants, it is not violated here.

## 1. Minimum Contacts

The defendants have minimum contacts with Florida as a consequence of their collective choice to organize an arm of their illegal conduct in this state. By forming an infringing entity here, holding themselves out as continuing to have a U.S. presence, Decl. of Klema, __ , they have collectively established a domestic base of operations in this state. They have deliberately availed themselves of the privilege to do business—albeit infringing and illegal—in this state by filing articles of organization with the Florida Department of State. That act alone satisfies the minimum contact with Florida justifying personal jurisdiction over the incorporators, defendants Aboobacker and Babu, together with their (plaintiffs', really) parent entity, DDG BIM Services,

Pvt. Ltd. and illegally-formed shell company, DDG Engineering Services, Pvt., Ltd., into which they transferred various corporate assets purchased with plaintiffs' funds and intended to be held by DDG BIM, and thus indirectly owned by plaintiffs.

Minimum contacts can also be established either directly by defendant, or through an agency theory. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264 (11th Cir. 2002). "Agency-based personal jurisdiction also exists where [a] subsidiary has no independent purpose for existence but rather conducts business solely for the parent." Hard Candy, LLC v. Hard Candy Fitness, LLC, 106 F. Supp. 3d 1231, 1241 (S.D. Fla. 2015).

Plaintiffs alleged that DDG BIM Services, LLC, the Florida-based defendant, is the mere conduit for the India-based defendants. [DE 1 at ¶13] ("defendants DDG India BIM, DDG India Engineering, Sharath, and Anitha operate in the United States through DDG Florida"); [DE 1 at ¶51] ("In an effort to falsely legitimize their fraud and to compete with plaintiffs directly on US soil, one or more of defendants organized DDG Florida on February 14, 2022. Defendants have used DDG Florida to facilitate their efforts to steal plaintiffs' business and customers"); [DE 1 at ¶ 59] ("Defendants utilized DDG Florida as a domestic proxy for their

unlawful US-based deception"). They clearly have had multiple, not just minimum, contacts not only with Florida, but with the broader United States. See, e.g., [DE 1-13 and 1-14].

"[W]hen a defendant exerts a high degree of control over an entity, the contacts created by the entity are, in reality, created by the defendant." United States ex rel. v. Mort. Inv'r Corp., 987 F.3d 1340, 1355 (11th Cir. 2021). "[W]here the apparent forum contacts of one actor are really the forum contacts of another, it is consistent with due process to impute those contacts for personal jurisdiction purposes." Id. The Florida-based defendant, DDG BIM Services, LLC, was an entity merely "through which [the Indian defendants] conduct[ed]" their business in this "particular jurisdiction" of Florida, id., and it "has no independent purpose for existence" other than "conducting business solely for" the Indian defendants, see Hard Candy, 106 F. Supp. 3d at 1241. The contacts created by the Florida-based defendant—being subject to general jurisdiction in Florida—are imputed to the four India-based defendants. Furthermore, they continue to operate in the state notwithstanding the administrative dissolution of their LLC, and ongoing internet presence in English, targeting U.S. customers. [DE 1-

10] (noting that defendants' operations are based in "St. Petersburg, Florida" and which has "63 employees"). Consequently, all the defendants have minimum contacts with this forum sufficient to satisfy due process under both the Fifth and Fourteenth Amendments.

### 2. *Fair play and substantial justice*

Finally, it is eminently fair to ensure that U.S. citizens, whose business is being actively taken over by foreign nationals from afar, have the ability to bring suit within the United Stats to secure appropriate redress. Substantial justice will ensure that plaintiffs can recover, at a minimum, their domestic operations and ensure that the Indian defendants cannot continue to wrongfully infringe U.S. trademark rights and otherwise interfere with domestic commerce from afar.

### II.    **THE COURT HAS PERSONAL JURISDICTION OVER THE INDIA DEFENDANTS UNDER THE FEDERAL LONG-ARM LAW, RULE 4(K)(2)**

Aside from Court's clear general jurisdiction over the Florida-based LLC, plaintiffs' action concerns solely their claims, as U.S. citizens, against alien individuals and juristic entities. The action does not involve concerns over intrastate sovereignty nor claims between citizens of

different states (as this Court is adjudicating claims respecting a Florida-based entity).

First, the Court has personal jurisdiction over defendants Aboobacker, Babu, DDG BIM and DDG Engineering because plaintiffs' Lanham Act and DTSA claims "arise[] under federal law." Fed. R. Civ. P. 4(k)(2). Each of those claims is directed to all five defendants. [DE 1 at ¶¶ 75-107]. Where a plaintiff alleges a Lanham Act violation, the first part of Rule 4(k)(2) is satisfied as a federal claim. <u>Ayla, LLC v. Alya Skin Pty., Ltd.</u>, 11 F.4th 972, 978-79 (9th Cir. 2021).

Second, to the extent the Court finds that Florida's long-arm statute does not reach these defendants, then there is no state that has jurisdiction over the Indian defendants. Their contacts with the United States have occurred principally through Florida, and if this state does not have jurisdiction over them, then it is hard to envision one that might. Where a "defendant is not subject to jurisdiction in any state's courts of general jurisdiction," Fed. R. Civ. P. 4(k)(2)(A), then any federal court may do so.

Third, there is no limit imposed by the U.S. Constitution or U.S. laws respecting personal jurisdiction in this case, so the Court has

jurisdiction pursuant to Rule 4(k)(2)(B). That is because "the limitations of the Constitution are barriers bordering the States" but as concerns federal interests, there is "no ground for constructing an imaginary constitutional barrier around the exterior confines of the United States for the purposes of shutting [the federal] government off from the exertion of powers which inherently belong to it by virtue of its sovereignty." <u>United States v. Bennett</u>, 232 U.S. 299, 306 (1914). Moreover, "it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution." <u>Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.</u>, 591 U.S. 430, 433 (2020). Therefore, neither the Fourteenth nor Fifth Amendments in any way affect the analysis of this Court's power to enter a default judgment against the non-appearing Indian defendants.

Even if it applies, the correct understanding of "due process" found in the Fifth Amendment at the founding was simply that a court's original process (in the form of the summons and complaint) was properly served. <u>See</u> Solum and Crema, Originalism and Personal Jurisdiction, 73 Ala. L. R. 483, 485-86 (2022) ("the original meaning of [the Fifth Amendment's due process clause] in 1791 was focused on 'process' in a

narrow sense that is close to the modern meaning of that term in the phrase 'service of process'").

Service on foreign defendants is procedurally authorized by Rule 4(f) and the Hague Convention. As the Court previously concluded, the Republic of India did not fulfill its treaty obligations to ensure the ministerial act of serving the India defendants, thus allowing this Court to exercise the Convention's explicit authorization to "give judgment even if no certificate of service or delivery has been received." [DE 20 at 6-8]. The Court then properly exercised its authority to determine the "means," Fed. R. Civ. P. 4(f)(3), by which the India defendants could be served, [DE 20 at 8-9]. Plaintiffs followed the Court's authorization to serve the original process by email. [DE 21]. Because the Indian defendants were properly "serv[ed with] a summons" authorized by this Court, that service "establish[ed] personal jurisdiction over [those] defendant[s]" here. Fed. R. Civ. P. 4(k)(2); but see Fuld v. Palestine Liberation Org., 101 F.4th 190 (2d Cir. 2024) (concluding the Fifth Amendment applies to foreign entities sued in U.S. courts), cert granted, no. 24-20 (Dec. 6, 2024).

It is of no moment that plaintiffs allege additional state-based

claims against the defendants, because this Court—as a federal court exerting jurisdiction over foreigners—has jurisdiction of the defendants' *persons*.

A court's jurisdiction over a foreign (non-U.S.) *party* is not claim-specific absent Congressional act establishing such a limit.[1] Nothing in the text of Rule 4, the Hague Convention, or the United States Constitution expressly or even impliedly creates a claim-based limitation. Instead, the notion of claim-limited jurisdiction over a party is an outgrowth of the Fourteenth Amendment's due process clause, beginning with <u>International Shoe</u>, and which continues today only by incorporation of state long-arm statutes respecting personal jurisdiction for any party that "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Where a state's long-arm statute is claim-specific, then Rule 4(k)(1) ties personal jurisdiction to specific claims. But that concept is wholly absent under Rule 4(k)(2).

At the founding, every court's personal jurisdiction over a defendant

---

[1] Additionally, personal jurisdiction is to be distinguished from and not conflated with a federal court's limited subject matter jurisdiction.

was understood as concerning the defendant itself, not the plaintiff's legal theories of recovery against that defendant. That is, personal jurisdiction was not claim-specific, but rather party-specific and general in scope.[2] A court either had power over a defendant, whether *in personam* or *in rem*, or it did not. Where persons or things physically came within the territory of a state sovereign, its jurisdiction was plenary: It is "[a]mong the most firmly established principles of personal jurisdiction in American tradition" that a court has "jurisdiction over nonresidents who are physically present" in the state where that court is located, and once the court had such jurisdiction over that individual, then it can "retain jurisdiction to enter judgment" irrespective of "how fleeting" that physical presence is. Burnham v. Superior Court, 495 U.S. 604, 610-11 (1990) (plurality op.). The English common law on which the American tradition rests allowed its courts to enter judgments against nonresident defendants even for "events outside the country" where that party's physical presence came within the court's geographic territory.

---

[2]    Again, this is to be distinguished from subject matter jurisdiction—a different jurisdictional concept wholly apart from a court's authority over the defendant—which *is* claim-specific in federal courts.

Id. at 611.

The amenability of a defendant even to a state court of general jurisdiction—irrespective of the plaintiff's claim(s)—continues today. Cf. id. at 610 (describing "tag jurisdiction" as one of the traditional "rules of jurisdiction applied in the 19th century"); id. at 619 (it is a "continuing tradition[] of our legal system"); Mallory v. Norfolk S. Ry. Co., 600 U.S. 122, 143 S.Ct. 2028 2034 (2023) (plurality op.) ("a suit could be maintained by anyone on any claim in any place the defendant could be found") (quoting 3 William Blackstone, Commentaries on the Laws of England 294 (1768)). Thus, there is no historical basis for joining personal jurisdiction with a plaintiff's claims, and especially claims between U.S. citizens and foreigners.

Today, the notion of personal jurisdiction being claim-limited has its roots in the concept of "specific jurisdiction" which the Supreme Court first articulated in International Shoe as "minimum contacts." Daimler AG v. Bauman, 571 U.S. 117, 126-27 (2014). The concept was predicated on "limits imposed on [states] by their status as coequal sovereigns in a federal system." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). International Shoe predicated the "minimum contacts"

idea (and thus specific jurisdiction) on the Fourteenth Amendment. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (the "due process" clause of the Fourteenth Amendment "requires" if the defendant isn't physically present, to "have certain minimum contacts with" the forum). Critically, however, the same federalism rationale limiting one state's ability to render judgment against another state's resident is not present as between the United States, as its own sovereign, and foreign, international sovereigns absent an equivalent agreement among them, such as by treaty.[3] The Fourteenth Amendment governs the relationship among *the states*, not the relationship between *international* sovereigns. The entire rationale of International Shoe's "minimum contacts," therefore, is lacking absent a treaty between the United States and foreign nations establishing a limited mutual governance collective.

Because the United States has not ceded part of its sovereignty to foreign nations, the concerns respecting territorial limits on personal jurisdiction as between states in the federal union does not exist in the

_____

[3] Notably, the United States has not ratified the Hague Convention on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters, the international equivalent of the Constitution's full faith and credit clause as between the states.

context of suits against international defendants. It is entirely up to the legislative branch, as a prerogative of its Article I powers, to determine the jurisdictional reach of the federal government's judicial power.

Here, "exercising jurisdiction" over the four India-based defendants "is consistent with the United States Constitution and laws" because none limit the Court's jurisdiction *in personam* over them. Fed. R. Civ. P. 4(k)(2)(B). In fact, the Hage Convention supports the notion that there has been compliance with the traditional understanding of due process where the original process in this action was lawfully served according to international agreement between the Republic of India and the United States. Perfecting that service according to law conferred *in personam* jurisdiction over the Indian defendants.

## CONCLUSION

The Court has personal jurisdiction over all five of the defendants, who collectively acted in furtherance of a conspiracy to obtain the plaintiff's business. That conspiracy, though occurring partially abroad and partially domestically, occurred within this District by the defendants' formally establishing a U.S. juristic entity that not only subjected DDG BIM Florida to this Court's jurisdiction, but also

defendants Aboobacker and Babu personally as the individuals behind that limited liability company as well as the two Indian-based entities. Original process lawfully issued from this Court and was then lawfully served on each defendant.

      /s/ Griffin Klema
Griffin C. Klema, Esq.
Fla. Bar No. 100279
Griffin@KlemaLaw.com
**Klema Law, P.L.**
PO Box 172381
Tampa, FL 33672
420 W. Kennedy Boulevard
Tampa, FL 33606
Telephone: 202-713-5292
*Attorney for Plaintiffs*