UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUNG PHI DUONG, and
KIM NHUNG THI NGUYEN,
d/b/a DDG Digital Design Group,

     Plaintiffs,

v.                                        Case No. 8:23-cv-1551-KKM-LSG

DDG BIM SERVICES LLC, et al.,

     Defendants.

_____

## ORDER

The United States Magistrate Judge recommends granting the plaintiffs' motion for default judgment. R&R (Doc. 28). After reviewing the plaintiffs' briefing on personal jurisdiction, I adopt in part and reject in part the Magistrate Judge's recommendation.

## I.    BACKGROUND

The plaintiffs are citizens of California and operate a business named DDG Digital Design Group (DDG). Compl. (Doc. 1) ¶ 2. Since October 2022, the plaintiffs have owned the federal DDG® mark, which is associated with engineering

and related services. *Id.* ¶¶ 14–18; *see* (Doc. 1-1). The mark has been used in commerce since May 2005. Compl. ¶ 18; *see* (Doc. 1-1). As DDG grew, the plaintiffs outsourced some of their operations to an entity in India. Compl. ¶ 21. Through this business relationship, the plaintiffs became acquainted with Defendants Shamla Aboobacker and Sarath Babu. *Id.* Eventually, the plaintiffs hired Aboobacker and Babu as independent contractors. *Id.* ¶ 22. Two years later, Aboobacker and Babu proposed creating an Indian office for DDG and the plaintiffs agreed. *Id.* ¶¶ 24–27, 30. Aboobacker and Babu informed the plaintiffs that they would register the new entity and then "transfer ownership" to the plaintiffs. *Id.* ¶ 28.

In reliance on this representation, the plaintiffs directed Aboobacker and Babu to register Defendant DDG BIM Services Private Ltd. (DDG India BIM), and DDG India BIM was incorporated in June 2019. *Id.* ¶ 30. Aboobacker and Babu accepted full-time employment offers to manage DDG India BIM, and the plaintiffs invested nearly $1,000,000 in tangible and intangible property. *Id.* ¶¶ 33–34. The plaintiffs authorized DDG India BIM to use the plaintiffs' trademark in marketing, branding materials, and on social media. *Id.* ¶¶ 37–43.

2

In January 2021, Aboobacker and Babu created Defendant DDG Engineering Services Private Ltd. (DDG India Engineering). *Id.* ¶ 45. Aboobacker and Babu did not disclose this new Indian entity to the plaintiffs and opened it with the intent of siphoning away the plaintiffs' current and future customers. *Id.* Aboobacker and Babu used the plaintiffs' trademark in promoting DDG India Engineering. *Id.* ¶ 48. Aboobacker and Babu also created Defendant DDG BIM Services LLC (DDG Florida) in February 2022, which they have used "to facilitate their efforts to steal plaintiffs' business and customers." *Id.* ¶¶ 51, 59.

With these new entities, Aboobacker and Babu misappropriated the plaintiffs' employees, infrastructure, and resources and sought to perpetuate fraud on at least one of the plaintiffs' customers. *Id.* ¶¶ 52–58, 60–61. Aboobacker and Babu also, without the plaintiffs' consent, applied for a trademark in India in the name of DDG India BIM. *Id.* ¶¶ 64.

After learning of Aboobacker and Babu's actions, the plaintiffs fired them, filed a criminal complaint in India, and opposed the trademark application. *Id.* ¶¶ 65–67. Aboobacker and Babu, though, continue to retain ownership over all the physical infrastructure in India, as well as the website and social media accounts. *Id.* ¶ 69. In response to the plaintiffs' discovery, Aboobacker and Babu slightly modified

"certain DDG graphics and logos on the websites and social media accounts under their control." *Id.* ¶ 68.

As a result of all this, the plaintiffs initiated this action against Aboobacker, Babu, DDG India BIM, DDG India Engineering, and DDG Florida, pleading seven claims: (1) trademark infringement against all defendants, *see* 15 U.S.C. § 1114 (Count One); unfair competition and false advertising against all defendants, *see* 15 U.S.C. § 1125(a) (Count Two); theft of trade secrets against all defendants, *see* 18 U.S.C. § 1836 (Count Three); breach of contract against Aboobacker and Babu (Count Four); breach of the implied covenant of good faith and fair dealing and breach of duty of loyalty against Aboobacker and Babu (Count Five); conversion against Aboobacker and Babu (Count Six); and civil conspiracy against all defendants (Count Seven). Compl. ¶¶ 75–125.

Because the defendants did not appear after being served, the clerk entered default against the defendants. (Docs. 9, 24). The plaintiffs then moved for default judgment as to Counts One, Two, Three, Four, and Seven. (Doc. 27).[1] The plaintiffs also seek attorney's fees and costs. *See id.* The United States Magistrate

---

[1] The plaintiffs "conditionally withdraw[] relief under Counts [Five] and [Six] provided that the Court enters the requested relief on the primary claims." (Doc. 27) at 3.

Judge recommends granting the motion. R&R (Doc. 28). As for the remedy, the Magistrate Judge recommends "$2 million in statutory damages [under the Lanham Act] and $2.7 million in contractual damages, plus $467 in costs," and various forms of injunctive relief. *Id.* at 24.

After the objection period ended, I asked the plaintiffs to address whether the Court has "personal jurisdiction over Defendants DDG BIM Services Pvt. Ltd., DDG Engineering Services Pvt. Ltd., Sarath Babu, and Shamla Aboobacker." (Doc. 31). The plaintiffs have filed a brief in response as well as supplemental authority. (Docs. 32, 33).

## II.  LEGAL STANDARDS

### A. Review of a Report and Recommendation

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's Report and Recommendation. 28 U.S.C. § 636(b)(1). If a party files a timely and specific objection to a finding of fact by a magistrate judge, the district court must conduct a de novo review with respect to that factual issue. *Stokes v. Singletary*, 952 F.2d 1567, 1576 (11th Cir. 1992). The district court reviews legal conclusions de novo, even in the absence of an objection. *See Cooper-Houston v. S. Ry. Co.*, 37

F.3d 603, 604 (11th Cir. 1994); *Ashworth v. Glades Cnty. Bd. of Cnty. Comm'rs*, 379 F. Supp. 3d 1244, 1246 (M.D. Fla. 2019).

## B. Personal Jurisdiction

Generally, to have personal jurisdiction, a federal court must determine if the forum state's long-arm statute is satisfied and ensure that the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018); *see* FED. R. CIV. P. 4(k)(1)(A). "[T]he plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

## III.   ANALYSIS

An "*in personam* judgment entered without personal jurisdiction over a defendant is void as to that defendant." *Oldfield*, 558 F.3d at 1217; *accord Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("[W]ithout [personal jurisdiction] the court is 'powerless to proceed to an adjudication.' " (quoting *Emps.*

6

*Reinsurance Corp. v. Bryant,* 299 U.S. 374, 382 (1937)). Therefore, before entering a default judgment, a district court must ensure that it has personal jurisdiction. *See Verizon Trademark Servs., LLC v. Producers, Inc.,* 810 F. Supp. 2d 1321, 1323 (M.D. Fla. 2011) ("A court must dismiss an action against a defendant over which it has no personal jurisdiction."). This inquiry, when concerning a non-resident defendant not subject to general jurisdiction, is claim-specific. *See Argos Glob. Partner Servs., LLC v. Ciuchini,* 446 F. Supp. 3d 1073, 1086 (S.D. Fla. 2020); *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 274 (5th Cir. 2006); *see also* § 48.193(1)(a), Fla. Stat. (extending specific jurisdiction over a "cause of action" in certain circumstances); *Cronin v. Washington Nat. Ins. Co.,* 980 F.2d 663, 671 (11th Cir. 1993) (considering whether Florida's long-arm statute authorized personal jurisdiction over each claim).[2] After having considered the complaint, the complaint's attachments, the Report and Recommendation, and the plaintiff's briefing, I adopt in part and reject in part the Report and Recommendation.

---

[2] The plaintiffs argue that a claim-specific approach is not appropriate under the original meaning of the Fifth Amendment's Due Process Clause. *See* (Doc. 32) at 22–28 ("[T]he correct understanding of 'due process' found in the Fifth Amendment at the founding was simply that a court's original process (in the form of the summons and complaint) was properly served."). In the light of my conclusion that Florida's long-arm statute does not authorize personal jurisdiction over the breach of contract claim, I need not evaluate this argument in order to decide this case.

### A. Personal Jurisdiction Exists over Counts One Through Three

The first three claims—trademark infringement, unfair competition and false advertising, and theft of trade secrets—arise under federal law and are brought against all defendants. Compl. ¶¶ 75–107. Personal jurisdiction exists over these claims.

First, DDG Florida is subject to general jurisdiction in Florida. The reach of 48.193(2), Florida Statues, which governs general jurisdiction, is co-extensive with the bounds of the Due Process Clause. *See Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). A corporation is subject to general jurisdiction where it is "at home," which is ordinarily its "place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); see *Subic Bay Marine Exploratorium, Inc. v. JV China, Inc.*, 257 So. 3d 1139, 1141 (Fla. 5th DCA 2018) ("[C]orporations incorporated under Florida law are Florida residents, subject to the general jurisdiction of Florida's courts.").

Although not definitively answered by precedent, the weight of non-precedential authority suggests that, under the Due Process Clause, a limited liability corporation is subject to general jurisdiction in its state of formation or organization. *See Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 n.10 (5th Cir. 2020);

*AccessNinja, Inc. v. PassNinja, Inc.*, No. 24-CV-24745, 2025 WL 2171606, at *4 n.5 (S.D. Fla. July 31, 2025); *Vega v. Friends of Dolphins, LLC*, No. 8:23-CV-993-CEH-NHA, 2024 WL 5294270, at *4 (M.D. Fla. Dec. 5, 2024); *Avus Designs, Inc. v. Grexx, LLC*, 644 F. Supp. 3d 963, 982 (D. Wyo. 2022) ("[T]he Supreme Court has at least strongly *implied* LLCs should be analyzed the same way as corporations for the purposes of general jurisdiction."); *Stubbs v. REV Group, Inc.*, No. 2:18-CV-00913-RDP, 2018 WL 6504396, at *2 (N.D. Ala. Dec. 11, 2018). I find these cases persuasive and reach the same conclusion. Because DDG Florida was formed in Florida, *see* Compl. ¶¶ 5, 51, it is subject to general jurisdiction here.

The Indian defendants are subject to specific jurisdiction regarding these claims because the plaintiffs allege that the Indian defendants committed all three torts in the United States through DDG Florida. *See* Compl. ¶ 12 ("DDG India BIM, DDG India Engineering, Sharath, and Anitha because each committed a tort within [Florida] by causing to be registered a business infringing DDG's trademark rights, and causing actual and prospective confusion with DDG's customers."); *id.* ¶ 13 ("[D]efendants DDG India BIM, DDG India Engineering, Sharath, and

Anitha operate in the United States through DDG Florida."); *id.* ¶ 59 ("Defendants utilized DDG Florida as a domestic proxy for their unlawful US-based deception.").

To prevail on a trademark infringement claim under the Lanham Act (Count One), "a plaintiff must demonstrate (1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion." *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). The Indian defendants' unauthorized use of the "DDG" mark in forming and conducting business through DDG Florida—which "facilitate[d] [the defendants'] efforts to steal plaintiffs' business and customers" and resulted in confusion—qualifies as trademark infringement. *See* Compl. ¶¶ 51–62, 70, 73, 75–83; (Doc. 1-13); (Doc. 1-14); 15 U.S.C. § 1114(1)(a); R&R at 8–11. These same facts suffice to prove a claim for false advertising and unfair competition under the Lanham Act (Count Two). Compl. ¶¶ 84–92; 15 U.S.C. § 1125(a)(1); *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994) (per curiam) (explaining that the "same set of facts enabling [the plaintiff] to prevail under [§] 1114(a)(1) will result in recovery pursuant to [§] 1125"); R&R at 8–11.

To prevail under the Defend Trade Secrets Act (DTSA) (Count Three), a plaintiff must show that (1) it possessed a trade secret—that is, "information

deriv[ing] independent economic value . . . from not being generally known . . . and not being readily ascertainable through proper means" that the plaintiff has "taken reasonable measure to keep . . . secret"—and (2) the defendant misappropriated that trade secret. 18 U.S.C. §§ 1836(b)(1), 1839(3); *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1310–11 & n.13 (11th Cir. 2020); *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1292–93 (M.D. Fla. 2018). "A trade secret is 'misappropriated' if (1) it is acquired 'by a person who knows or has reason to know that the trade secret was acquired by improper means' or (2) it is disclosed or used without consent," subject to certain conditions. *Miner, Ltd. v. Sanacore*, No. 8:25-CV-1538-KKM-TGW, 2025 WL 1952032, at *2 (M.D. Fla. July 16, 2025) (quoting 18 U.S.C. § 1839(5)). The DTSA applies extraterritorially where an "act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837(2).

The complaint alleges that Babu and Aboobacker, by virtue of their employment, had a duty to not reveal the plaintiffs' trade secrets, but disclosed them to DDG Florida without the plaintiffs' consent. Compl. ¶¶ 19–20, 97–102. This suffices to state a claim for tortious activity in Florida with respect to Babu and Aboobacker. *See* R&R at 14–16; 18 U.S.C. § 1839 (5)(B)(ii)(II) (defining

11

"misappropriation" to mean "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret").

Although the plaintiffs do not allege that DDG India BIM and DDG India Engineering were directly involved in the Florida-based misappropriation, personal jurisdiction remains warranted under the long-arm statute. The plaintiffs allege that (1) DDG Florida "act[ed] on behalf of" DDG India BIM and DDG India Engineering in using the trade secrets and (2) DDG Florida "manifests no separate corporate interests of its own and functions solely to achieve the purpose[s]" of DDG India BIM and DDG India Engineering, along with Aboobacker and Babu. *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1322 (11th Cir. 2025) (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1273 (11th Cir. 2002)); *see, e.g.*, Compl. ¶ 103 ("The defendants' acts in furtherance of the use and misappropriation of plaintiffs' trade secrets was committed in the United States through proxy entities, including DDG Florida.").

12

Therefore, in all three Counts, the plaintiffs "state a cause of action" in tort that arises, in part, from actions taken by the Indian defendants, either directly or indirectly, in Florida. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002); *see* § 48.193(1)(a)(2), Fla. Stat. Accordingly, Florida's long-arm statute is satisfied.

The Due Process Clause is similarly satisfied with respect to the Indian defendants. The first three Counts "arise out of or relate to" the defendants' contacts, either direct or imputed, with Florida. *Louis Vuitton*, 736 F.3d at 1355–56 (quotation omitted). Second, given the formation of DDG Florida, the defendants have "purposefully direct[ed]" their activities to Florida, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation omitted), and thus "should reasonably anticipate being haled into court in the forum," *Louis Vuitton*, 736 F.3d at 1357. Third, the exercise of personal jurisdiction "comports with fair play and substantial justice." *Id.* at 1358. In addressing this question, a court must consider "the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining relief, and the judicial system's shared interest in resolving the dispute." *Jekyll Island-State Park Auth.*, 140 F.4th at 1328. In the light of "modern transportation and communications," the burden on the defendants is not usually an obstacle to personal jurisdiction. *Id.* In this case, it is outweighed by

13

the plaintiffs' interest in obtaining relief against all the defendants—perhaps only possible in Florida—and Florida's interest in "protecting consumers from confusion that results from trademark infringement." *Louis Vuitton*, 736 F.3d at 1358.

Accordingly, I conclude that personal jurisdiction exists over Counts One through Three.

## B. Personal Jurisdiction Does Not Exist over Count Four

In Count Four, the plaintiffs allege that Aboobacker and Babu breached an agreement to transfer ownership of DDG India BIM to the plaintiffs. Compl. ¶¶ 108–12. The plaintiffs first demanded transfer in November 2019—over two years before the formation of DDG Florida—but, to date, neither Aboobacker nor Babu have transferred their ownership interests. *Id.* ¶¶ 51, 110–11.

Florida's long-arm statute allows for the exercise of specific jurisdiction over a "cause of action arising from . . . [b]reaching a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]" or a "cause of action arising from . . . [e]ntering into a contract that complies with [§] 685.102," which requires that the contract include a provision consenting to jurisdiction in Florida. § 48.193(1)(a)(7), (9), Fla. Stat. The plaintiffs' breach of contract claim does not qualify under either provision. The plaintiffs (California residents) allege that

Aboobacker and Babu (Indian residents) breached a contract by failing to transfer ownership to the plaintiffs of DDG India BIM. Compl. ¶¶ 108–12. No part of the parties' contract required acts to be performed in Florida, and the plaintiffs do not present evidence that the parties consented in the contract to jurisdiction in a Florida court. *See* § 48.193(1)(a)(7), (9), Fla. Stat.

The plaintiffs instead claim that specific jurisdiction over the breach of contract claim is authorized by other provisions of the long-arm statute. Section 48.193(1)(a)(2) allows a court to exercise jurisdiction over "any cause of action arising from . . . [c]ommitting a tortious act within [Florida]." As interpreted by Florida courts, this provision can "support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida." *Mazer*, 556 F.3d at 1281–82; *see, e.g.*, *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co., Ltd.*, 124 F.4th 1322, 1339 (11th Cir. 2025); *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd.*, 752 So. 2d 582, 585 (Fla. 2000); *Amersham Enters., Inc. v. Hakim-Daccach*, 333 So. 3d 289, 296 (Fla. 3d DCA 2022).

The plaintiffs argue that personal jurisdiction exists over the breach of contract claim because the breach of contract was part of a conspiracy that included tortious acts in Florida. (Doc. 32) at 9–13; Compl. ¶¶ 123–25. For the reasons below, the plaintiffs fail to plausibly allege a conspiracy among all five defendants. *See infra* at 20–21. But even assuming otherwise, neither the text of § 48.193(1)(a)(2) nor the caselaw interpreting it bear the weight of the plaintiffs' argument. Section 48.193(1)(a)(2) requires an in-state tort and the caselaw provides that co-conspirators can be haled into Florida state court to answer for that in-state tort. In other words, the conspiracy theory of personal jurisdiction operates to "bring the conspirators within the jurisdiction of [Florida]" concerning torts that were "commit[ed] within [Florida]." *Blumberg v. Steve Weiss & Co., Inc.*, 922 So. 2d 361, 364 (Fla. 3d DCA 2006); § 48.193(1)(a)(2), Fla. Stat.; *see Amersham Enters., Inc.*, 333 So. 3d at 295 ("[A] party asserting conspiracy jurisdiction under this particular section of the long-arm statute must allege that the underlying conspiratorial torts occurred within the state."); *see also Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. 3d DCA 2018) (per curiam) (explaining that conspiracy is "a device to allow a plaintiff to spread liability to those

involved in causing the underlying tort" and is therefore "inextricably linked with the underlying tort").

The plaintiffs present no authority for the proposition that a conspiracy that includes torts committed within Florida authorizes a Florida court to exercise personal jurisdiction over a breach of contract claim concerning non-resident parties and foreign acts. This proposition departs from the "connexity" requirement imposed by Florida courts. *See Level 8 Mgmt., Inc. v. Wildflower Legacy & Wealth Planning, LLC*, 395 So. 3d 590, 597 (Fla. 2d DCA 2024) ("The specific jurisdiction statute requires that the cause of action arise from the defendant's contacts with the state."). It also does not square with the claim-specific focus of the long-arm statute and the provisions concerning breach of contract claims. *See Piazenko v. Pier Marine Interiors GMBH*, 314 So. 3d 438, 443 (Fla. 3d DCA 2020) (" 'Specific' jurisdiction is claim-specific."); § 48.193(1)(a)(7), (9) Fla. Stat. Accordingly, Florida's conspiracy jurisdiction caselaw does not provide a basis for exercise of specific jurisdiction over the breach of contract claim.[3]

---

[3] Although the plaintiffs do not raise this theory, there is also no allegation that the conspiracy was "engineered in Florida." *Mazer*, 556 F.3d at 1283.

The plaintiffs next ground personal jurisdiction in Aboobacker and Babu's membership in DDG Florida. (Doc. 32) at 13–14. The plaintiffs first rely on a provision that allows for the exercise of jurisdiction over "any cause of action arising from . . . [o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency in [Florida]." § 48.193(1)(a)(1), Fla. Stat. But the breach of contract claim against Aboobacker and Babu does not arise from their operation of DDG Florida inside the state.

The plaintiffs also rely on § 48.193(2), Florida Statutes, which provides that a "defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." This is the statutory provision authorizing general jurisdiction. *See Wiggins v. Tigrent, Inc.*, 147 So. 3d 76, 85 (Fla. 2d DCA 2014). The plaintiffs appear to think that because DDG Florida is subject to general jurisdiction in Florida, Aboobacker and Babu, DDG Florida's two members, Compl. ¶ 8, are too, *see* (Doc. 32) at 13–14. Although an agent's forum contacts may be imputed to a principal for the purposes of general jurisdiction under Florida's long-arm statute, *see Meier*, 288 F.3d at 1269–74; *Universal Caribbean Establishment v. Bard*, 543

18

So. 2d 447, 448 (Fla. 4th DCA 1989), the plaintiffs fail to allege facts demonstrating that, through DDG Florida, Aboobacker and Babu "engage[d] in substantial activity in [Florida]." *Bard*, 543 So. 2d at 558. The plaintiffs also fail to present support for the proposition that a principal can be haled into Florida court concerning acts taken before the Florida agent existed. Here, the breach of contract appears to have predated the formation of DDG Florida by over two years. *See* Compl. ¶¶ 51, 110.

Finally, the plaintiffs rely on "pendent personal jurisdiction." (Doc. 32) at 14–16. Caselaw on the subject provides that, "[i]f the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction generating event." *Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.*, 322 F. App'x 852, 854 (11th Cir. 2009) (per curiam); *see SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1231 (11th Cir. 2023); *Cronin*, 980 F.2d at 671. This doctrine does not apply to the plaintiffs' breach of contract claim because it does not arise from the incorporation of DDG Florida and the tortious acts that followed—which generated jurisdiction in Florida. Indeed, the breach of contract claim, at least in some form, predated the opening of DDG Florida by over two years. *See* Compl. ¶¶ 51, 110–11.

19

Accordingly, "pendent personal jurisdiction" does not authorize the exercise of personal jurisdiction over the breach claim.

For these reasons, I conclude that personal jurisdiction is lacking over Count Four.

### C. The Plaintiffs Fail to State a Civil Conspiracy Claim

With respect to Count Seven, the plaintiffs allege that all five defendants "acted in concert with one another for the purpose of injuring plaintiff[s], including to infringe its trademarks, steal its trade secrets, tortiously interfered with current or prospective customers of plaintiff, misappropriate and convert business assets and equity ownership in DDG India BIM to themselves, and defraud plaintiff, its existing customers, and prospective customers." Compl. ¶ 123. Each defendant, the plaintiffs contend, took an affirmative act in furtherance of the conspiracy. *Id.* ¶ 124.

The plaintiffs fail to plausibly allege a civil conspiracy claim among all five defendants. *See ECB USA, Inc. v. Savencia Cheese USA, LLC*, 143 F.4th 1232, 1243 (11th Cir. 2025) ("[T]he 'threshold question that must be determined is whether the allegations of the complaint state a cause of action' for conspiracy." (quoting *Wendt*, 822 So. 2d at 1260)). "A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by

unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Parisi v. Kingston*, 314 So. 3d 656, 661 (Fla. 3d DCA 2021).

The plaintiffs' allegations constitute "general allegations of conspiracy," which "are not sufficient." *Id.*; *see id.* ("[A] claim for civil conspiracy must contain clear, positive and specific allegations."); *World Class Yachts, Inc. v. Murphy*, 731 So. 2d 798, 799 (Fla. 4th DCA 1999) ("General allegations of conspiracy are inadequate."); *accord ECB USA, Inc.*, 143 F.4th at 1243–44. Even though the plaintiffs have pleaded facts supporting the existence of a conspiracy between Aboobacker and Babu, they fail to plead facts supporting the existence of a conspiracy between all five defendants. Accordingly, I do not adopt the Magistrate Judge's recommendation regarding Count Seven.

### D. Attorney's Fees and Costs

The Magistrate Judge recommends concluding that the plaintiffs are entitled to an award of attorney's fees under the Lanham Act, *see* 15 U.S.C. § 1117(a), and to an award of $467 in costs, R&R at 22–23. After review of the record, I adopt this recommendation.

## IV.  CONCLUSION

The plaintiffs moved for default judgment on five Counts—(1) trademark infringement against all defendants (Count One); unfair competition and false advertising against all defendants (Count Two); theft of trade secrets against all defendants (Count Three); breach of contract against Aboobacker and Babu (Count Four); and civil conspiracy against all defendants (Count Seven)—and the Magistrate Judge recommended entry of default judgment as to all five. The Magistrate Judge also concluded that the plaintiffs were entitled to attorney's fees and costs. I accept the Magistrate Judge's recommendation with respect to Counts One through Three and the award of attorney's fees and costs, but not with respect to Counts Four and Seven. The plaintiffs "conditionally" withdrew their requests for relief under Counts Five and Six "provided that the Court enters the requested relief on the primary claims." (Doc. 27) at 3. Because I am rejecting the Magistrate Judge's recommendation regarding Counts Four and Seven, the plaintiffs may move for relief with respects to Counts Five and Six, if they so choose.

Accordingly, the following is **ORDERED**:

1.    The Magistrate Judge's Report and Recommendation (Doc. 28) is

**ADOPTED in part** and **REJECTED in part.** The Report and

Recommendation is made a part of this Order for the purposes of Counts One through Three and the plaintiffs' entitlement to attorney's fees and costs.

2.   The Motion for Default Judgment (Doc. 27) is **GRANTED in part** and **DENIED in part**.

3.   No later than **August 28, 2025**, the plaintiffs may move for default judgment on Counts Five and Six. If the plaintiffs fail to file a timely motion or otherwise indicate that they do not wish to move for default judgment on Counts Five and Six, I will enter default judgment, with the relief that the Magistrate Judge recommends, on Counts One through Three.

**ORDERED** in Tampa, Florida, on August 21, 2025.

*Kathryn Kimball Mizelle*

Kathryn Kimball Mizelle
United States District Judge